**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 10 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

HULETT FOSTER,

      Petitioner - Appellant,

v.

GLYNN BOOHER, Warden,

      Respondent - Appellee.

No. 00-6414

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(No. CIV-00-843-T)**

---

Gloyd L. McCoy, Coyle, McCoy & Burton, Oklahoma City, Oklahoma, for Petitioner-Appellant.

Lori S. Carter, Assistant Attorney General (W.A. Drew Edmondson, Attorney General, with her on the brief), Oklahoma City, Oklahoma, for Respondent-Appellee.

---

Before **EBEL**, **KELLY**, and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

Garlotte v. Fordice holds that, for purposes of habeas corpus jurisdiction, a prisoner that is "in custody" for one of a series of consecutive sentences is "in custody" for all of those sentences. 515 U.S. 39, 41 (1995). Foster appeals the district court's conclusion that it lacked jurisdiction over his 28 U.S.C. § 2254 petition because Garlotte does not apply to consecutive sentences that have been imposed by different courts at different times. Under our jurisdiction pursuant to 28 U.S.C. § 1291 and § 2253(a), we grant a certificate of appealability, reverse, and remand.

## I

Foster was convicted of grand larceny after former conviction of a felony on October 25, 1995, in the District Court of McClain County, Oklahoma. He was sentenced to a term of ten years' imprisonment. On September 5, 1996, Foster pled nolo contendere to second-degree forgery, conspiracy to commit grand larceny, grand larceny, and two counts of obtaining money by false pretense in the District Court of Cleveland County, Oklahoma. The Cleveland County court sentenced Foster to four terms of fifteen years and one term of one year, all to be served concurrently with each other but "consecutively to all other pre-existing terms." (R. Doc. 10 Ex. E at 2.) Foster took a direct appeal of the McClain County conviction and also pursued state post-conviction collateral relief; his direct appeal was denied in August 1996 and his state petition for collateral relief

-2-

was denied in April 2000. On December 29, 1999, Foster completed his sentence for the McClain County conviction and began serving his fifteen-year sentence for the Cleveland County convictions. On April 25, 2000, Foster filed a § 2254 petition in federal district court attacking only his McClain County conviction.

The magistrate judge recommended that the petition be dismissed for lack of jurisdiction because Foster was no longer "in custody" pursuant to the McClain County conviction even though he was "in custody" pursuant to the Cleveland County convictions. According to the magistrate's report and recommendation, "The consecutive nature of th[e] sentence [was] not relevant to the custody requirement." (R. Doc. 13 at 3.) The district court agreed and dismissed Foster's petition for lack of jurisdiction. Foster timely filed an appeal, and in an unpublished order and judgment this panel affirmed. We granted Foster's petition for rehearing.

## II

Federal courts may grant habeas relief to prisoners held by state authorities only when the habeas petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); see also id. § 2241(c)(3). This requirement is jurisdictional. Oyler v. Allenbrand, 23 F.3d 292, 293–94 (10th Cir. 1994).

At first glance, it would appear clear that we do not have jurisdiction over

Foster's claim because Foster is challenging a conviction underlying a sentence for which he is no longer "in custody." Indeed, the traditional view was that a prisoner could attack only the conviction for which he was in custody and only if success on the habeas claim would lead to immediate release from that custody. For example, in McNally v. Hill, the Supreme Court applied this reasoning to affirm the dismissal of a prisoner's habeas petition for lack of jurisdiction because the petition challenged a conviction underlying a sentence which he had not begun to serve, but which was imposed consecutively to his current sentence. 293 U.S. 131, 135, 138 (1934).

The Supreme Court abandoned this strict definition of "in custody" in the context of consecutive sentences in Peyton v. Rowe, 391 U.S. 54, 67 (1968), specifically overruling McNally. The Court in Peyton held that a prisoner could challenge the conviction underlying a sentence that he had not yet begun to serve but that had been imposed consecutively to the sentence that he was currently serving. Id. The Court reasoned that the McNally rule was poor policy; by requiring prisoners to wait until they actually started to serve their later sentence, the rule forced prisoners to delay bringing habeas claims—delay that might result in the deterioration of the evidence that they would need to vindicate those claims. Id. at 62–63. The Court concluded that "a prisoner serving consecutive sentences is 'in custody' under any one of them for purposes" of the federal

habeas statutes.  Id. at 67.

Garlotte is "appropriately described as Peyton's complement, or Peyton in reverse."  Garlotte, 515 U.S. at 41.  In Garlotte, the prisoner attempted to challenge the conviction underlying a sentence that he had finished serving, but that was also "first in a consecutive series" of sentences that he was still serving.  Id.  Garlotte "[f]ollow[ed] Peyton" and did "not disaggregate Garlotte's sentences, but comprehend[ed] them as composing a continuous stream."  Id.  The Court "therefore [held] that Garlotte remain[ed] 'in custody' under all of his sentences until all are served, and now may attack the conviction underlying the sentence scheduled to run first in the series."  Id.  The Garlotte Court refused to "adopt a different construction" of the habeas statute's jurisdictional requirements "simply because the sentence imposed under the challenged conviction lies in the past rather than in the future."  Id. at 46.  As a result, the Court held that the federal courts had jurisdiction over the prisoner's claim.

Application of Garlotte would therefore appear to be simple in this case. Foster is currently serving a "continuous stream" of two consecutive sentences. He has finished serving the sentence imposed under the conviction that he is attempting to attack, but he is still serving the other sentences which were imposed consecutively.  Under Garlotte, we are required to view the consecutive sentences "in the aggregate, not as discrete segments."  Id. at 47.   Therefore,

Foster would appear to be "in custody" for habeas jurisdictional purposes with respect to the conviction underlying the first sentence because that sentence is part of a consecutive series of sentences which he is still serving.

**III**

We consider whether any other factors mandate that the apparently clear rule of Garlotte should not apply to this case.

**A**

The facts of Garlotte are somewhat different from the facts presented here. In Garlotte, the prisoner had been convicted and sentenced to the consecutive sentences by the same trial court at the same time. Id. at 41–42. In this case, Foster was sentenced to the two segments of his consecutive sentences by different courts at different times. The State argues that, on these grounds, Garlotte is not applicable.

This proposed distinction runs against the case law of the Supreme Court. In Maleng v. Cook, the Court allowed a prisoner currently serving a federal sentence to challenge the validity of a state sentence that would commence at the end of the federal sentence. 490 U.S. 488, 493–94 (1989). Similarly, in Braden v. 30th Judicial Circuit Court, the Court held that the "in custody" requirement did not prevent a prisoner, currently serving a sentence in Alabama, from challenging a future detainer by Kentucky on different charges. 410 U.S. 484,

487–89 (1973). Even in Peyton itself, the consecutive sentences in question had been imposed at different times. 391 U.S. at 55–56.

Furthermore, any attempt to distinguish Garlotte on its facts ignores the language in Garlotte, which sets out a clear and broad rule that we must "view consecutive sentences in the aggregate, not as discrete segments." 515 U.S. at 47. There is no indication in the language of Garlotte that these principles are or should be limited to the particular facts that the Court was faced with in that case.

**B**

The State contends that habeas jurisdiction is lacking because "the invalidation of [Foster's] 1995 conviction will not affect the length of the sentence which [he] is currently serving." (Appellee's Br. at 6.)

We are uncertain what exactly the State means by this argument. It might be making a "mootness" claim that we have no jurisdiction because we can grant no relief. We first note that "mootness" is a separate question from whether a prisoner is "in custody" for purposes of § 2254. See Spencer v. Kemna, 523 U.S. 1, 7 (1998) (distinguishing between mootness and "in custody" jurisdiction); Carafas v. LaVallee, 391 U.S. 234, 238 (1968) (same); Oyler, 23 F.3d at 294 (describing "in custody" jurisdiction as "a separate and distinct jurisdictional question" from mootness).

Regardless of its proper characterization, the State's argument does not

accurately account for Oklahoma state law.  In Floyd v. State, the Oklahoma

Court of Criminal Appeals stated that the situation may arise

> where a prisoner serving consecutive sentences on several
> convictions succeeds in having one of the sentences invalidated after
> it has been fully or partially served.  In this instance . . . the state
> must credit the sentences remaining to be served on the valid
> convictions with the time served under the voided conviction. . . .
> [A]ll that [is] involved [is] an adjustment of the administrative
> records of the prison authorities so that service on the remaining
> valid sentences would commence at an earlier date.  Common sense
> and fundamental fairness require that under such circumstances the
> state should not ignore the period of imprisonment under the invalid
> sentence when an appropriate remedy is so readily available.

540 P.2d 1195, 1197 (Okla. Crim. App. 1975) (quoting Miller v. Cox, 443 F.2d

1019, 1020–21 (4th Cir. 1971)); see also Barr v. Crisp, 555 P.2d 1070, 1071

(Okla. Crim. App. 1976).  In other words, under Oklahoma law, if Foster is

successful in voiding his McClain County sentence, the time served under that

sentence will be credited towards his Cleveland County sentence.[1]  Foster's

fifteen-year sentence will therefore be treated by the State as if it had begun, at

the latest, on the date of Foster's Cleveland County conviction, instead of

beginning after the completion of his service of the McClain County sentence.[2]

---

[1]  Because we base our decision on applicable state law principles, the question of whether federal constitutional law independently requires granting Foster credit for time served under the invalidated conviction is not properly before us.

[2]  We express no opinion as to whether Oklahoma law or federal constitutional law would require giving Foster credit for time served before his

(continued...)

Thus, if Foster's habeas petition were successful in the "vitiation of the expired 1995 sentence," he might be released from prison at an earlier date, a result that would clearly "affect the length of the sentence which [Foster] is currently serving." (Appellee's Br. at 6.)

We are mindful of the lack of finality our interpretation of the "in custody" requirement suggests concerning expired convictions. At the same time, invalidating an expired conviction is made significantly more difficult by the one-year limitation period on habes relief contained in 28 U.S.C. § 2244(d)(1). See Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000); Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998). We have no occasion to address that issue in this case.

## C

Finally, the State argues that policy grounds support its proposed distinction. The State claims first that the "concerns expressed in Garlotte are not implicated in this case" and that those concerns included that "the ability of a petitioner to challenge a conviction would hinge upon the arbitrary decision of a trial court as to which sentence would run first." (Id. at 5.) According to the State, these concerns do not exist in this case because the order of Foster's service of the consecutive sentences depended on the order of the imposition of

---

[2](...continued)
plea of nolo contendere.

-9-

the sentences by two different judges, and therefore the State argues that no arbitrary decision was ever made.

We question whether, simply because the sentences are imposed by two separate judges, there is no risk of arbitrariness. Calendars from court to court and judge to judge can vary greatly in the backlog of cases and the speediness of pre-trial proceedings, the trial itself, and sentencing. Moreover, different prosecutors may vary in terms of the priorities they place in prosecuting cases, in the times they set for trial for particular cases, and in the speed at which they work. Multiple charges against a single defendant may be consolidated in one court, separated into different courts, or moved from venue to venue, such that sentencing that might have been performed by one court is instead divided among two courts, or vice versa. In short, all of the vicissitudes of the criminal court docket mean that there is no guarantee that any one case will proceed to completion ahead of another case, even where the criminal conduct underlying one case occurred before the other. Given this, we fail to see how arbitrariness necessarily depends on the number of courts or judges involved in the consecutive sentencing decision.[3]

---

[3] Indeed, the order in which consecutive sentences are imposed under Oklahoma law is potentially even more arbitrary because it depends solely upon which sentence "is first received" at the correctional institution where the prisoner is housed, rather than the dates when the sentences are imposed. Okla.

(continued...)

More important, however, is the fact that the <u>Garlotte</u> Court did not rely on the policy grounds that the State discusses and relied instead on its conclusion that the rule laid out in <u>Peyton</u> was controlling. Thus, the Court stated that it was "[f]ollowing <u>Peyton</u>" in holding that consecutive sentences are viewed in the aggregate and that "therefore" the prisoner in <u>Garlotte</u> could challenge the earlier sentence. <u>Garlotte</u>, 515 U.S. at 41. The Court in <u>Garlotte</u> was motivated by a desire to establish a clear and consistent rule regarding consecutive sentences. "Having construed the statutory term 'in custody' to require that consecutive sentences be viewed in the aggregate, we will not now adopt a different construction simply because the sentence imposed under the challenged conviction lies in the past rather than in the future." <u>Id.</u> at 46. Indeed, nowhere in the <u>Garlotte</u> opinion does the Court mention any "arbitrariness" rationale; the State's argument appears to be based solely on the Court's description of the facts of Garlotte's sentencing in state court, <u>id.</u> at 41–42, a description that was not relied upon at all by the Court in reaching its conclusion.

The State's attempted policy distinction is therefore weak and unsupported, and it certainly is not sufficient to justify a departure on our part from the clear and explicit command of the Supreme Court that a prisoner serving consecutive

---

[3](...continued)
Stat. tit. 21, § 61.1.

-11-

sentences "remains 'in custody' under all of his sentences until all are served."
Id. at 41.

## IV

The prior order and judgment filed August 10, 2001 is **VACATED**, and Foster's application for a certificate of appealability is **GRANTED**. The judgment of the district court is **REVERSED**, and the case is **REMANDED** for proceedings consistent with this opinion.