

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-4-2005

# DeFoy v. McCullough

Precedential or Non-Precedential: Precedential

Docket No. 03-3474

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"DeFoy v. McCullough" (2005). *2005 Decisions.* Paper 1543.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1543

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-3474
_____


ROBERT DEFOY,

Appellant

v.

JOHN M. MCCULLOUGH, Superintendent:
GERALD J. PAPPERT, Att. General:
PENNSYLVANIA BOARD OF
PROBATION AND PAROLE


_____


APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE WESTERN
DISTRICT OF PENNSYLVANIA

(D.C. No. 00-cv-00110E)
District Judge:  The Honorable Sean J. McLaughlin
_____

ARGUED MAY 11, 2004

BEFORE: NYGAARD, McKEE, and WEIS, <u>Circuit</u> <u>Judges</u>.


(Filed: January 4, 2005)


_____

Thomas W. Patton, Esq. (Argued)
Office of Federal Public Defender
1001 State Street
1111 Renaissance Centre
Erie, PA 16501
    <u>Counsel for Appellant</u>


Scott A. Bradley, Esq. (Argued)
Office of Attorney General of Pennsylvania
564 Forbes Avenue Manor Complex, 6th Floor
Pittsburgh, PA 15219

James K. Vogel, Esq.
Office of District Attorney
140 West 6th Street
Erie, PA 16501
    <u>Counsel for Appellees</u>

_____

OPINION OF THE COURT
_____

NYGAARD, <u>Circuit Judge</u>.

This case arises from a situation that is troubling on several accounts: First, because it highlights the procedural morass that state prisoners face in pursuing habeas relief, and second, because it illustrates the tension between what should be the touchstone of any penal system—rehabilitation—and a convicted sex offender's rights against self-incrimination under the Fifth Amendment. Presently, we must determine whether a Pennsylvania state prisoner challenging his denial of parole on Fifth Amendment grounds must first seek a writ of mandamus in state court before seeking federal habeas review. For the reasons that follow, we hold that the answer is no.

3

I.

Robert DeFoy was convicted in state court of armed robbery. He served ten years of a 10–20 year sentence before being paroled. Shortly after his release, DeFoy was recommitted as a technical parole violator to serve eighteen additional months. After serving this additional time, he was re-paroled.

While on parole for the second time, DeFoy was arrested for involuntary deviate sexual intercourse, statutory rape, and corruption of a minor. During trial on these charges, DeFoy testified as to his innocence but was convicted nonetheless and sentenced to 78–156 months imprisonment. In addition, the state court revoked his parole on the armed robbery sentence and ordered him to serve an additional forty months imprisonment for that offense.[1] Finally, the sentencing judge recommended

_____

[1] Under Pennsylvania law, "[a] grant of parole does not eliminate
(continued...)

4

that DeFoy participate in Pennsylvania's Sexual Offender Treatment Program. Because DeFoy was unwilling to admit he committed the sex offenses, however, he was precluded from participating in the Program.[2]  In turn, he was twice denied parole while serving the armed robbery sentence because he had not participated in the Program.  DeFoy's direct appeals in the Pennsylvania courts were denied on the basis that denials of parole are not appealable in those courts.  He did not file a writ of mandamus or a writ of habeas corpus in state court and instead sought federal habeas relief.

---

[1](...continued)
a prisoner's sentence, but instead, the prisoner continues to serve his sentence during which time he or she is the subject of society's rehabilitation efforts under supervision." *Weaver v. Pa. Bd. of Prob. & Parole*, 688 A.2d 766, 769 (Pa. Commw. Ct. 1997).  Once DeFoy violated his parole by committing new crimes, he was subject to being recommitted on his armed robbery sentence.

[2]One of the specific criteria for the treatment phase of the Program stipulates that an inmate must "admit [his] offense." *See* App. at 239.

5

DeFoy's amended petition under 28 U.S.C. § 2254 included several claims, but only one is presently relevant. According to DeFoy, the requirement that he admit guilt to qualify for the Sexual Offender Treatment Program violates his Fifth Amendment right against coerced self-incrimination. The District Court referred this claim to the Magistrate Judge, who ultimately concluded it was likely DeFoy could have filed a petition for a writ of mandamus in the Pennsylvania state courts. In light of our instruction that any ambiguity concerning the availability of a state remedy should result in a habeas petition claim being dismissed as unexhausted, *see Coady v. Vaughn*, 251 F.3d 480, 489 (3d Cir. 2001), the Magistrate Judge recommended that the District Court dismiss the petition. The District Court adopted the Magistrate Judge's Report and Recommendation in its entirety, but entered a certificate of appealability on the following question: "Whether constitutional claims concerning the denial of parole in Pennsylvania, other than those premised upon the *ex post facto* Clause, must be

6

presented to the state courts in order to satisfy the exhaustion requirement."

II.

We have jurisdiction over a District Court's final order dismissing a habeas petition pursuant to 28 U.S.C. §§ 2253 and 1291.

A.

The threshold issue before us is whether DeFoy's petition is moot. The Commonwealth claims this is the case because DeFoy is no longer serving his sentence for armed robbery, but instead is now serving his sentence for the sex offenses. Thus, according to the Commonwealth, any denial of parole occurring while DeFoy was still serving his armed robbery sentence will remain unaffected by our ruling. This argument is flawed.

A prisoner may seek federal habeas relief only if he is in custody in violation of the constitution or federal law. 28 U.S.C. § 2254(a). Moreover, a petition for habeas corpus relief generally becomes moot when a prisoner is released from

7

custody before the court has addressed the merits of the petition. *Lane v. Williams*, 455 U.S. 624, 631 (1982). This general principle derives from the case or controversy requirement of Article III of the Constitution, which "subsists through all stages of federal judicial proceedings, trial and appellate . . . the parties must continue to have a personal stake in the outcome of the lawsuit." *Lewis v. Cont'l Bank Corp*., 494 U.S. 472, 477-78 (1990) (internal citations and quotations omitted). In other words, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* at 477; *see also Maleng v. Cook*, 490 U.S. 488, 492 (1989) (holding that habeas petitioner does not remain "in custody" after the sentence imposed has fully expired merely because of the possibility that the prior conviction will be used to enhance sentences imposed for any subsequent crimes of which he is convicted); *United States v. Romera-Vilca,* 850 F.2d 177, 179 (3d Cir. 1988) (holding that prisoner's motion to

8

vacate his conviction was not mooted when he was released from custody, where he faced potential deportation as a collateral consequence of conviction).

In *Garlotte v. Fordice*, 515 U.S. 39, 41 (1995), the Supreme Court held that a prisoner's challenge to the validity of his conviction was not moot despite the fact that he was no longer in custody for that conviction. The Court reasoned that because Garlotte was still in custody for sentences consecutive to that already served, he could attack the conviction underlying the sentence that ran first in the series. *Id.* Although the facts in *Garlotte* are somewhat different from those here (*i.e.,* the prisoner there had been convicted and sentenced by the same court at the same time), *Garlotte* allows us to review a completed sentence when the prisoner, like DeFoy, is still serving a sentence imposed by a different court at a different time. *See Foster v. Booher*, 296 F.3d 947, 950 (10th Cir. 2002).

DeFoy was required to serve the remainder of his armed robbery sentence *before* he could begin serving his sex offense

sentence. The effect of any error as to the former was to delay the start of the latter. Thus, because any remedy we grant DeFoy might affect his release date for the sentence he is currently serving, we conclude that under *Garlotte* and *Foster*, DeFoy's habeas petition is not moot.[3]

B.

We may not review a petition for writ of habeas corpus "unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State," or shows that

_____

[3.] There is also a narrow exception to the general mootness rule that rescues DeFoy's petition from being moot. The doctrine of collateral consequences applies where a former prisoner can demonstrate he will suffer some collateral consequences if his conviction is allowed to stand. *See Carafas v. LaVallee,* 391 U.S. 234, 237-38 (1968); *Chong v. Dist. Dir., INS*, 264 F.3d 378, 384 (3d Cir. 2001). It is a petitioner's burden to demonstrate that collateral consequences exist to avoid having a case dismissed as moot. *United States v. Kissinger*, 309 F.3d 179, 181 (3d Cir. 2002). The Supreme Court has held that the length of a term of supervised release cannot be reduced "by reason of excess time served in prison." *United States v. Johnson*, 529 U.S. 53, 60 (2000). Requiring DeFoy to admit his guilt after having consistently denied it may have the collateral consequence of his being indicted for perjury. Therefore, even if DeFoy had already been released from prison, the collateral consequences doctrine would prevent the issue from being moot.

10

doing so would be futile because state procedures are unavailable or ineffective. 28 U.S.C. § 2254(b). The exhaustion doctrine addresses "federalism and comity concerns by affording the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Coady*, 251 F.3d at 488 (internal citations and quotations omitted). The burden is on the habeas petitioner to prove exhaustion. *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993). The District Court—in the midst of considerable jurisprudential confusion on the issue—concluded that DeFoy failed to exhaust his state remedies because he could have filed a petition for a writ of mandamus in the state court before proceeding with his federal habeas corpus petition. We apply plenary review to this conclusion. *Whitney v. Horn*, 280 F.3d 240, 249 (3d Cir. 2002).

Although we have requested, and received, some clarification from the Pennsylvania Supreme Court regarding the remedies available to prisoners who wish to challenge their

11

denial of parole on constitutional grounds, *see, e.g., Coady v. Vaughn*, 770 A.2d 287 (Pa. 2001), the Court's response is not conclusive as to the issues before us now. Therefore, some recitation of the relevant Pennsylvania case law is in order.

In *Burkett v. Love*, 89 F.3d 135, 142 (3d Cir. 1996), we predicted that Pennsylvania courts would permit three methods of attacking the denial of parole in Pennsylvania courts: direct appeal, mandamus, and state habeas corpus. Our predictions were refuted in *Weaver v. Pennsylvania Board of Probation & Parole*, 688 A.2d at 766, when the Pennsylvania Commonwealth Court declined to adopt the reasoning in *Burkett* and held these suggested remedies to be unavailable. It noted, specifically, "we do not believe that the remedies suggested in *Burkett* are available to a prisoner who has been denied parole based upon an unconstitutional factor." *Id.* at 771–72. It is certainly worth noting that the issue in *Weaver* was identical to the issue here: whether a parole board may deny parole based on the fact that a prisoner has not completed a sex offender

12

treatment program when that failure stems from the prisoner's refusal to admit guilt for the sex offense in the first place.

In light of *Weaver*, several District Courts in our Circuit relied on the premise that there were no remedies in Pennsylvania state courts for prisoners who wished to challenge the denial of parole, even when the denial was based on an unconstitutional factor. As a result, these courts excused exhaustion of state remedies. *See, e.g., Bonilla v. Vaughn*, No. 97-7440, 1998 WL 480833 at *5 (E.D. Pa. Aug. 14, 1998); *Speth v. Pennsylvania Bd. of Probation & Parole*, No. 98-1631, 1998 WL 272155 at *2 (E.D.Pa. May 18, 1998); *cf. George v. Vaughn*, No. 98-3, 1998 WL 188847, at *2 (E.D. Pa. April 21, 1998) ("[I]t is not clear whether any remedies are available in Pennsylvania to challenge the denial of parole.").

This area of law became conflicted, however, when the Pennsylvania Commonwealth Court in *Myers v. Ridge*, 712 A.2d 791, 794 (Pa. Commw. Ct. 1998), seemingly ignoring *Weaver*, reached the merits of a prisoner's due process, *ex post*

13

*facto*, and equal protection claims because it found that it may entertain an application for a writ of mandamus to review the Board's denial of parole "to the extent that a constitutional or statutory violation has occurred." The Commonwealth Court's failure to distinguish its decision in *Myers* from its holding in *Weaver*—or for that matter to even cite to *Weaver*—added to the already confusing jurisprudence.

The Pennsylvania Supreme Court entered the fray in *Rogers v. Pennsylvania Board of Probation and Parole*, 724 A.2d 319 (Pa. 1999), holding that direct appeal is not available to challenge the denial of parole. *Id*. However, in a footnote, the *Rogers* Court made what can be considered as only a passing reference to the question at issue, recognizing the potential viability of a writ of mandamus. *Id*. at 323 n.5. It noted that mandamus "*may* be available to compel the Parole Board to conduct a hearing or to apply the correct law." *Id*. (emphasis added). It seems plain enough that saying something "may" be available is not the same as saying something "is" available.

14

Given the Pennsylvania Supreme Court's equivocation, we did not consider this to be a conclusive and final clarification of the issue, and we subsequently certified the question to the Pennsylvania Supreme Court. Specifically, we asked:

> 1. May a person who has been denied parole from a Pennsylvania sentence obtain review from a Pennsylvania state court of a claim that the denial of parole violated the *ex post facto* clause of the United States Constitution?
>
> 2. If so, may review be appropriately secured on direct appeal, through a petition for a writ of mandamus, or in some other manner?

*Coady*, 251 F.3d at 489. The Pennsylvania Supreme Court advised that where:

> discretionary actions and criteria are not being contested but rather the actions of the board taken pursuant to changed statutory requirements are being challenged, an action for mandamus remains viable as a means for examining whether statutory requirements have been altered in a manner that violates the *ex post facto* clause. Such an action could be brought in the original jurisdiction of the Commonwealth Court. Absent a change in the statutes governing parole, however, denial of parole would generally constitute a discretionary matter that is not subject to review.

15

*Coady*, 770 A.2d at 290. Importantly, the Pennsylvania Supreme Court in *Coady* provided guidance only as to challenges to denials of parole premised on violations of the *ex post facto* Clause. It specifically held that "parole denial claims are not normally suited to review by way of mandamus." *Id.* at 290. It held, moreover, that "[m]andamus will not lie to compel a purely discretionary act." *Id.*

Inasmuch as *Weaver* has never been overruled, we conclude that it is the best indication of how the Pennsylvania Supreme Court would resolve the issues raised by DeFoy. Because the Commonwealth Court's decision in that case is directly on point, it is highly instructive here. Therefore, a Pennsylvania state prisoner challenging the denial of parole need not file a petition for a writ of mandamus in order to satisfy the dictates of exhaustion.

The *Weaver* Court held that mandamus is not available to a prisoner denied parole based upon a constitutional error by the parole board. 688 A.2d at 771–72. The Court explained:

16

> Mandamus is based upon a duty by an agency to follow a law and is available only when, under a correct interpretation of that law, the agency has an absolute ministerial duty—no choice—to act in a certain way. *Mandamus cannot be used to say that an agency considered improper factors*, that its findings of fact were wrong, or that the reasons set forth in its decision are a pretense. If that was the nature of mandamus, there would be no difference between it and an appeal from the agency's decision or other forms of actions to address those concerns.

*Id*. at 777 (emphasis added) (footnote omitted). As in *Weaver*, DeFoy's refusal to admit guilt was the dispositive—albeit potentially improper—factor in the denial of his parole. As the *Weaver* Court explains, however, mandamus is not available to review a parole board's consideration of improper factors. By force of logic, therefore, DeFoy is not entitled to seek a writ of mandamus on his claim.

We do not believe the decision of the Pennsylvania Supreme Court in *Coady* is in conflict with our conclusion. Our certified question in that case concerned the availability of mandamus for challenges to the denial of parole premised solely

17

upon the *ex post facto* Clause, not upon any and all constitutional protections. In response, the Pennsylvania Supreme Court held that mandamus is available where a challenge to the denial of parole is premised on the *ex post facto* Clause. In the same breath, however, it held that "[a]bsent a change in the statutes governing parole . . . denial of parole would generally constitute a discretionary matter that is not subject to review [via a petition for writ of mandamus]." *Coady*, 770 A.2d at 290. The Court also explained that "parole denial claims are not normally suited to review by way of mandamus." *Id*. A fair reading of *Coady* suggests a hesitance on the part of the Pennsylvania Supreme Court to permit a writ of mandamus to review the denial of parole.

We therefore read *Coady's* holding narrowly, applying only to *ex post facto* claims. Indeed, if mandamus extended beyond the holding in that case, it would—as the Commonwealth Court explained in *Weaver*—be no different than a direct appeal. *See Weaver*, 688 A.2d at 777. And

18

whatever the status of mandamus, it is settled that no direct appeal is available. *See Coady*, 770 A.2d at 289. Thus, mandamus is not available for Pennsylvania state prisoners seeking to challenge the denial of their parole on constitutional grounds other than the *ex post facto* Clause.

Accordingly, in answer to the question submitted by the District Court, we conclude that claims of constitutional violations in the denial of parole in Pennsylvania need not be presented to the state courts via a petition for writ of mandamus in order to satisfy the requirement of exhaustion. We reverse the District Court to the extent it held otherwise and remand so the District Court may address the merits of DeFoy's petition.[4]

---

[4.] We do not reach DeFoy's constitutional argument under the Fifth Amendment. He alleges that because Pennsylvania's practice makes parole for any sex offender contingent on participation in the Sexual Offender Treatment Program, and the Program in turn requires that he admit guilt, the Program violates his rights under the Fifth Amendment. We acknowledge that if DeFoy's allegations are accurate, then he was presented with an unenviable choice: refuse to admit guilt and be ineligible to participate in the Program, thereby losing eligibility for parole, or admit guilt and incriminate himself,

(continued...)

III.

We reverse the judgment of the District Court dismissing DeFoy's claims as unexhausted and remand for proceedings consistent with this opinion.

_____

[4.](...continued)
providing evidence that would most certainly be used against him in any post-conviction efforts to demonstrate his innocence. However, because the District Court did not certify to us the question of the Program's constitutionality, we express no view.

_____

Weis, <u>Circuit</u> <u>Judge</u>, <u>concurring</u>.

I agree with the result reached by the majority, but arrive there by a different route. In my view, Pennsylvania law provides a procedure through which DeFoy may present his claim to the state courts and indicates that they have jurisdiction over that remedy. However, it would be futile to require him to pursue his efforts in the state forum, because, on several occasions, the Commonwealth Court has denied claims similar to DeFoy's on the merits. Therefore, the District Court should excuse exhaustion of state remedies and proceed to decide the case.

A.

As the majority notes, the means by which a state prisoner may seek relief in state courts from a denial of parole based on a constitutional violation is a matter of considerable jurisprudential confusion. In <u>Burkett v. Love</u>, 89 F.3d 135 (3d

Cir. 1996), we reviewed the opinions of the Pennsylvania Supreme Court and the Commonwealth Court as of that time and concluded that a prisoner had "available three potential ways of attacking the denial of parole in Pennsylvania courts – appeal, mandamus or habeas corpus."

Following our decision in Burkett, the Pennsylvania Supreme Court held that Parole Board decisions are not "adjudications" under state law and, therefore, they are not appealable. Rogers v. Pa. Bd. Of Prob. & Parole, 724 A.2d 319 (Pa. 1999). However, in a footnote the Court said,

> "While appellants are not entitled to appellate review of a Parole Board decision, they may be entitled to pursue allegations of constitutional violations against the Parole Board through a writ of mandamus, or through an action under 42 U.S.C. § 1983.[5] Mandamus is an extraordinary remedy which is available to compel the Parole Board to conduct a hearing or to apply the correct law."

Id. at 323 n.5 (internal citations omitted).

---

[5.] Whether § 1983 is a proper remedy for denial of parole was argued before the United States Supreme Court on December 6, 2004 in the case of Wilkinson v. Dotson, No. 03-287.

In Coady v. Vaughn, 251 F.3d 480, 489 (3d Cir. 2001), we certified a narrow question to the Pennsylvania Supreme Court – may a person who has been refused parole obtain review in a Pennsylvania state court of a claim that the denial "violated the *ex post facto* clause of the United States constitution," and, if so, "may review be appropriately secured on direct appeal, through a petition for a writ of mandamus, or in some other manner." Coady, 251 F.3d at 489.

In response to our inquiry, the Pennsylvania Supreme Court acknowledged that "parole denial claims are not normally suited to review by way of mandamus" and "mandamus will not lie to compel a purely discretionary act." Coady v. Vaughn, 770 A.2d 287, 290 (Pa. 2001). However, the court explained

> "where . . . discretionary actions and criteria are not being contested . . . an action for mandamus remains viable as a means for examining whether statutory requirements have been altered in a manner that violates the *ex post facto* clause. Such an action could be brought in the original jurisdiction of the Commonwealth Court."

23

Id.; see also Hall v. Pa. Bd. of Prob. & Parole, 851 A.2d 859 (Pa. 2004) (entertaining an appeal from Commonwealth Court's dismissal of a mandamus petition and holding that the *ex post facto* clause had not been violated.); Finnegan v. Pa. Bd. of Prob. & Parole, 838 A.2d 684, 687 (Pa. 2003) (citing Coady and concluding that mandamus is the "proper avenue for seeking relief" under the *ex post facto* clause of the United States Constitution).

Although in Coady the Pennsylvania Supreme Court did not consider the availability of mandamus for constitutional challenges other than those raising the *ex post facto* clause,[6] no subsequent opinion by that court has expressly confined the holding in Coady to preclude other constitutional challenges.

In Winklespecht v. Pennsylvania Board of Probation & Parole, 813 A.2d 688 (Pa. 2002), the Court considered the merits of the appellant's *ex post facto* claim, but concluded that

---

[6.] Given the limited question this Court certified, the answer was jurisprudentially correct.

24

no relief was due. The Court declined to decide whether habeas corpus was an available remedy for a "true constitutional claim." Id. at 692.

Justice Castille's concurring opinions, both joined by Justice Newman, in Coady and Winklespecht suggest that a constitutional challenge to a parole denial may by cognizable under Pennsylvania's habeas corpus statute. Justice Castille noted that "because the practical effect of a parole denial is the continuation of the prisoner's incarceration, a petition for writ of habeas corpus would seem to be the logical and appropriate manner to raise a viable constitutional claim stemming from the Parole Board's decision." Coady v. Vaughn, 770 A.2d 287, 291 (Pa. 2001) (Castille, J., concurring). Justice Castille stated that comments on habeas corpus to the contrary in Weaver v. Pa. Bd. of Prob. & Parole, 688 A.2d 76 (Pa. Commw. Ct. 1997), were "problematic to say the least." Id. at 294.

I have found no opinion of the Pennsylvania Supreme Court post-Coady containing any language suggesting that only

25

constitutional claims raising an *ex post facto* charge are subject to review. Similarly, research has not uncovered any holding of the Pennsylvania Commonwealth Court after <u>Coady</u> stating that mandamus jurisdiction is limited to *ex post facto* claims. In fact, in <u>Voss v. Pennsylvania Board of Probation & Parole</u>, 788 A.2d 1107 (Pa. Commw. Ct. 2001), a post-<u>Coady</u> case, the Court addressed the merits of a mandamus case involving constitutional issues other than the *ex post facto* clause. <u>Voss</u> sustained an inmate's due process challenge, concluding that it was "not persuaded that" denial of a "parole application based upon a [concept of] 'achieving the fair administration of justice'... meets the requirements of due process." <u>Id</u>. at 1111.

Similarly, in <u>Evans v. Pennsylvania Board of Probation & Parole</u>, 820 A.2d 904 (Pa. Commw. Ct. 2003), also post-<u>Coady</u>, an inmate presented claims of both an *ex post facto* clause violation and a denial of due process. The Court denied both claims on the merits but conceded a constitutional right to due process in parole cases. <u>Id</u>. The Court did not deny mandamus jurisdiction on either claim.

26

Weaver, 688 A.2d 766, is a pre-Coady opinion. In that case, the prisoner alleged a Fifth Amendment violation in being denied parole because he refused to admit guilt in order to qualify for the Sex Offender Treatment program. Id. at 769. The Commonwealth Court found that it had no jurisdiction to consider the claim as a direct appeal, a holding later confirmed by Rogers. Id. at 770-71. In the course of discussing the availability of mandamus, the court said that, "Mandamus cannot be used to say that an agency considered improper factors . . . ." Id. at 777. The Court explained

> "Because there is no constitutional prohibition against using Weaver's refusal to admit that he committed the rape for which he was convicted as a basis for denying participation in treatment program, and because a failure to successfully complete that program is a valid reason for denying parole, Weaver has failed to set forth a cause of action in mandamus."

Id. at 779.

In other portions of its opinion, however, Weaver referred to constitutional violations "that are wholly extraneous to the decision of whether or not to grant parole, i.e., retaliation for bringing a lawsuit, race, religion and national origin." Id. at 773. These matters are "non-legitimate and non-bona fide

27

reasons for denying parole because they have no relation to the parole process." Id. A fair reading of Weaver reveals that it recognizes that mandamus jurisdiction exists in the Commonwealth Court for constitutional violations that should not enter into a parole decision.

Less than a year after Weaver, in a case "in the nature of mandamus," the Commonwealth Court suggested that mandamus was available to remedy constitutional violations in the refusal of parole. Myers v. Ridge, 712 A.2d 791 (Pa. Commw. Ct. 1998). The Court noted that "decisions to grant or deny parole" are not usually reviewable except where "a constitutional or statutory violation has occurred." Id. at 794. Myers did not discuss or cite Weaver even though the factual predicates and legal issues were similar.

My research persuades me that Pennsylvania does provide a remedy for constitutional violations that infect parole denial proceedings. The state supreme court seemingly would permit the use of mandamus for that purpose. The court has not

definitively addressed the question of whether habeas corpus is available.[7]

I am convinced that the courts of Pennsylvania would not deny jurisdiction over claims of constitutional violations in prison settings or elsewhere. Consequently, I would hold that DeFoy's claim would find a jurisdictional basis in the Pennsylvania courts.

B.

The exhaustion of state remedies requirement is excused when resort to the state courts would be futile. Lynce v. Mathias, 519 U.S. 433 (1997); Whitney v. Horn, 280 F.3d 240 (3d Cir. 2002); Lines v. Larkins, 208 F.3d 153 (3d Cir. 2000). The Pennsylvania courts have rejected the constitutional theory espoused by DeFoy on a number of occasions and there is no reason to expect a different result if he would be required to bring an action for mandamus. See Byrd v. Pennsylvania Bd. of Prob. & Parole, 826 A.2d 65 (Pa. Commw. Ct. 2003); Sontag v.

---

[7.] In Winklespecht, the court noted, ". . . we leave for another day the question of the propriety of habeas corpus as a remedy." Winklespecht, 813 A.2d at 692.

<u>Ward</u>, 789 A.2d 778 (Pa. Commw. Ct. 2001); <u>Weaver,</u> 688 A. 2d 766 (Pa. Commw. Ct. 1997).

C.

In these circumstances, where a remedy potentially exists but attempting to exercise it would be futile, I agree with the majority that exhaustion is not required and the District Court should decide the case.

The issues in this case are important, but in the absence of a fully developed record, like the majority, I intimate no view as to whether DeFoy has a cause of action. Some sources bearing on the issue are <u>McKune v. Lile</u>, 536 U.S. 24 (2002); <u>Ainsworth v. Risley</u>, 317 F.3d 1 (1st Cir. 2002); <u>see also</u> <u>Rauser v. Horn</u>, 241 F.3d 330 (3d Cir. 2001); <u>Kerr v. Farrey</u>, 95 F.3d 472 (7th Cir. 1996); Seth Grossman, <u>Note: A Thin Line Between Concurrence and Dissent:  Rehabilitating Sex Offenders in the Wake of McKune v. Lile</u>, 25 Cardoza L. Rev. 1111 (2004) (reviewing denial of parole to inmates later vindicated by DNA evidence).

A development of the record on the current practices of the Department of Corrections and the Board of Parole with

respect to the implementation of the Sex Offender Treatment Program may be in order. Consideration of alternatives to admissions of guilt as a prerequisite to participation in a program or eligibility for parole may be crucial. See e.g., Jonathan Kaden, Therapy for Convicted Sex Offenders: Pursuing Rehabilitation Without Incrimination, 89 J. Crim. L. & Criminology 347 (1998); Colorado Dep't of Corrections: State Sex Offender Treatment Programs, 50 State Survey 2000.