**J.K. IDEMA, et al., Petitioners,**

**v.**

**Condoleezza RICE, et al., Respondents.**

**Civil Action No. 05–2064 (EGS).**

United States District Court,
District of Columbia.

March 21, 2007.

suli Banderas challenge their current, in the case of Idema, and prior, in the case of the other petitioners, incarceration in Pulacharke Prison in Afghanistan. Although petitioners concede that they are (or were) in the physical custody of the government of Afghanistan, they argue that they are (or were) in the actual custody and control of the respondents. Pending before the Court is a petition for habeas corpus. In addition, petitioners have filed a series of other motions intimately related to their underlying habeas petition. Upon careful consideration of the petition, the various motions, responses and replies thereto, supplemental briefing on the question of jurisdiction, the applicable law, and the entire record herein, the Court dismisses as moot the habeas claims of Banderas, Bennett and Caraballo. As discussed below, the Court orders the respondents to provide a response to Idema's factual allegations. The Court denies all other pending motions.

## I. BACKGROUND[1]

On March 17, 2005, the petitioners filed a petition for writ of habeas corpus in the United States District Court for the Southern District of New York. Their petition has since been transferred to this Court.

Petitioners Idema, Bennett, and Caraballo are United States citizens. Petitioner Banderas is a citizen of Afghanistan. Idema and Bennett are former members of the United States military and claim to be currently employed by Counter–Terrorist Group U.S. ("Counterr Group"). Caraballo was an investigative journalist at the time of the events in this case. Banderas was allegedly assigned to Counterr Group as an interpreter, liaison, and aide to Idema.

John Edwards Tiffany, Bloomfield, NJ, for Petitioners.

Brent Bennett, pro se.

Edward Caraballo, Jersey City, NJ, pro se.

Zorro Rasuli Banderas, pro se.

Ori Lev, United States Department of Justice, Washington, DC, for Respondents.

### MEMORANDUM OPINION

SULLIVAN, District Judge.

Petitioners J.K. ("Jack") Idema, Brent Bennett, Edward Caraballo, and Zorro Ra-

---

1. The facts set forth in this section are those alleged and verified by petitioners in their petition for writ of habeas corpus and various affidavits.

Petitioners claim that they provided military and humanitarian assistance in support of the U.S. and Coalition war on terror in Afghanistan. Counterr Group allegedly developed intelligence identifying terrorist threats to U.S. citizens and diplomats and delivered intelligence on al-Qaida to various U.S. intelligence agencies. Petitioners also claim that they captured numerous terrorists in Afghanistan between April and July 2004. Some of these individuals were turned over to U.S. and Afghan military forces. Others were held by petitioners while awaiting transfer to U.S. custody. Petitioners claim that all of Counterr Group's activities related to these suspected terrorists were done with the full knowledge of Afghan officials and Coalition forces.

On July 5, 2004, all of the petitioners were arrested by Afghan forces that they claim were "under the control [of] the FBI." Pet. for Writ of Habeas Corpus at 17, ¶ 13. After their arrest, petitioners claim that they were repeatedly interrogated, subjected to deplorable prison conditions, and tortured. They allege that their torture was conducted "with FBI agents in close proximity and directing the interrogation." *Id.* at 18, ¶ 16. Petitioners also allege that U.S. Embassy officials and FBI Director Robert Mueller were aware of this torture but the U.S. government did nothing to intervene and the FBI actually encouraged the torture.

Petitioners were eventually charged with various crimes under Afghan law including entering the country illegally with false Indian passports (Idema, Bennett, and Caraballo), running a private and/or illegal jail, and torture. After a trial on September 15, 2004 that was allegedly fraught with violations of Afghan and international law and only lasted for three hours, petitioners were convicted of all of the charges pending against them. The Afghan nationals on trial were sentenced to one to five years in prison, Caraballo was sentenced to eight years, and Bennett and Idema were sentenced to ten years. The Court of Appeals eventually upheld the conviction in late March 2005. However, the Court of Appeals dismissed a charge against the three Americans for entering Afghanistan illegally and reduced their sentences.[2]

Petitioners allege that the FBI stole and/or destroyed valuable exculpatory evidence during the initial trial and the appeal. They further allege that U.S. officials exerted undue influence over Afghan judges. Petitioners also claim that the Afghan judges that presided over their appeal and the prosecutor indicated that they thought that the petitioners were innocent and would have released them but were ordered not to do so.

The day after their first trial ended in September 2004, petitioners were transferred from NDS custody to the Pulacharke prison, which is under the control of the Afghan Ministry of Justice. Idema still remains in this prison, but Bennett and Caraballo are no longer in prison and have left Afghanistan. *See* Oct. 3, 2006 Bennett Aff. (detailing how Bennett left Afghanistan and how he is not in United States custody); Supp. Brief in Opp'n to Petitioners' Motion for TRO [Dkt. No. 20] (noting unopposed fact that Caraballo was released from Afghan custody and returned

---

**2.** The sentences were reduced to five years for Idema, three years for Bennett, and two years for Caraballo. *See Afghan court cuts prisoners' sentence,* UPI, Apr. 1, 2005; Amir Shah, *Afghan court upholds convictions, cuts sentences for Americans jailed for freelance terrorist hunt,* Associated Press, Mar. 31, 2005 (collectively Ex. B to Respondents' Opp'n to Petitioners' Mot. for TRO and Other Relief and Rule 60 Mot.).

to the United States on April 30, 2006).[3] Banderas also appears to no longer be in prison. *See generally* Oct. 6, 2006 Banderas Aff. (noting various instances where Banderas engaged in conduct outside the prison and nowhere indicating that Banderas is still a prisoner). If he does remain in prison, it appears to be his choice to do so. *See* Habeas Pet. at 34, ¶ 57 ("Lieutenant Rasuli [Banderas] ... refused to be released without Idema and the rest of the team, requesting the judges to allow him to stay in prison with ... Jack Idema and the other two Americans until their trials were completed.... The judges granted his request."); Oct. 6, 2006 Banderas Aff. ¶ 4 ("The Appeals court held a new trial in December 2004. I was found innocent of all charges ... and released.... I decided to stay with Jack and my other team members.").[4]

## II. DISCUSSION

### A. Habeas Petitions of Banderas, Bennett and Caraballo

■ After a habeas petitioner's sentence expires or he is otherwise released, "some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit is to be maintained." *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998); *see also Qassim v. Bush*, 466 F.3d 1073, 1076–77 (D.C.Cir.2006) (relying on *Spencer* to find that survival of habeas claim after release requires a collateral consequence); *Zalawadia v. Ashcroft*, 371 F.3d 292, 297 (5th Cir.2004) ("[F]or a court

to exercise habeas jurisdiction over a petitioner no longer in custody, the petitioner must demonstrate that he was in custody at the time he filed the petition and that his subsequent release has not rendered the petition moot, i.e., that he continues to present a case or controversy under Article III, § 2 of the Constitution."). The petitioner bears the burden of establishing collateral consequences. *See, e.g., Kimberlin v. U.S. Parole Comm'n*, No. 03–5017, 2004 WL 885215, at *1 (D.C.Cir. Apr.22, 2004) (noting that petitioner "must demonstrate continuing collateral consequences attributable to the challenged ... decisions to avoid dismissal of his petition"); *DeFoy v. McCullough*, 393 F.3d 439, 442 n. 3 (3d Cir.2005) ("It is a petitioner's burden to demonstrate that collateral consequences exist to avoid having a case dismissed as moot.").

■ Petitioners Banderas, Bennett and Caraballo, by their own admission, are no longer in custody at Pulacharke prison and there is no suggestion that any of them are in any form of American custody. Moreover, Caraballo and Bennett have left Afghanistan. These individuals have failed to demonstrate any collateral consequences that would warrant survival of their habeas claims. Petitioners Bennett and Banderas do not even allege any collateral consequences, making their habeas claims moot.

In a brief filed on September 11, 2006, Caraballo argued that he suffers two collateral consequences of his imprisonment in Afghanistan: (1) ruined employment

---

**3.** Caraballo appeared at a hearing before this Court on May 4, 2006. *See Idema, et al. v. Rice, et al.,* No. 05–2064 (D.D.C. May 5, 2006) (Order).

**4.** In his most recent affidavit, Banderas also indicates that "[w]hen Jack [Idema] and Brent [Bennett] were found innocent but not

released, the Appeals Court also gave me a *new* sentence." Oct. 6, 2006 Banderas Aff. ¶ 4. As ·discussed above, however, this affidavit also strongly suggests that he was no longer in prison as of October 2006 given his description of events in which he was involved.

prospects and (2) denial of core parental ights. *See* Pet'r Caraballo's Resp. to Supp. Brief in Opp'n to Petitioners' Mot. for TRO Addressing Mootness of Pet'r Caraballo's Claim [Dkt. No. 24]. Caraballo claims that his professional reputation as a journalist has been completely destroyed. *Id.* at 5. He accuses U.S. and Afghan officials of having provided false and prejudicial remarks to the press while he was imprisoned. *Id.* Caraballo also claims that he has been denied visitation with his daughter as a result of the events in Afghanistan and his alleged wrongful conviction. *Id.* at 7.

■ While these consequences are unfortunate, they do not present a legally cognizable reason for this Court to maintain jurisdiction over Caraballo's habeas claim. Equitable remedies that courts can provide in habeas cases- typically involve "either an order to a custodian to ameliorate the conditions of a petitioner's detention ... or an order freeing a petitioner from penalties resulting from conviction that persist beyond the end of detention." *Omar v. Harvey,* 479 F.3d 1, 17 (D.C.Cir. 2007). In *Lane v. Williams,* 455 U.S. 624, 631–33, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982), the Supreme Court limited post-release habeas relief to "civil disabilities" imposed on former detainees by operation of law. *See also Carafas v. La Vallee,* 391 U.S. 234, 237–38, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) (finding that habeas petition was not moot after expiration of sentence because of certain statutory consequences of being a convict under New York law such as losing the right to vote, serve as an official in a labor union, serve as a juror or engage in certain businesses). By contrast, non-statutory consequences that flow from a conviction such as loss of employment prospects or affect on a sentence in a future criminal proceeding are not sufficient to keep a habeas petition from be-

coming moot upon release. *Lane,* 455 U.S. at 632–33, 102 S.Ct. 1322.

In this case, Caraballo only alleges "collateral consequences" that are not imposed by state or federal law as a result of his conviction in Afghanistan. As in *Lane,* the consequences alleged are based on the discretionary decisions of employers or judges and are not legally prescribed consequences of incarceration. *See id.* This Court has no power to overturn the Afghan conviction, declare it void, or in any way affect the discretionary decisions of prospective employers or family court judges. While the Court understands Caraballo's desire to restore his good name, a habeas petition is not the proper method to do so.

For the reasons discussed above, the habeas claims of Caraballo, Bennett, and Banderas are dismissed as moot.

## B. Idema's Habeas Petition

Idema is the only individual who still remains incarcerated at Pulacharke Prison in Afghanistan. The Court is deeply troubled by the allegations raised in the habeas petition and various subsequent filings regarding the level of U.S. control over petitioners' arrest, conviction, appeal, and confinement. While this Court is keenly aware of case law suggesting that it does not have jurisdiction over a habeas petition stemming from a foreign conviction and sentence, petitioners' claim does more than simply challenge a foreign conviction. Petitioners allege that United States officials ordered their arrest, ordered their torture, stole exculpatory evidence during their trial and appeal, exerted undue influence over Afghan judges, and either directly or indirectly ordered judges who found petitioners innocent not to release petitioners from prison. These facts are alleged in a habeas petition and later statements of fact and affidavits that have all been veri-

fied as true and correct by petitioners under penalty of perjury.

■ The Court cannot simply ignore petitioners' alleged facts and find that it lacks jurisdiction without any response to these troubling facts by respondents. Indeed, the respondents have invited the Court to seek further information from respondents regarding the facts in this case.[5] Accordingly, the respondents shall respond to petitioners' factual allegations and show cause why this Court should not grant a writ of habeas corpus to petitioner Idema by **April 10, 2007.**

### C. Motions for Temporary Restraining Orders

#### 1. First Motion for TRO

On March 1, 2006, petitioners filed a Motion for Temporary Restraining Order and Other Relief and Rule 60 Motion [Dkt. No. 7]. In their motion, petitioners alleged that Caraballo was being "held hostage by Taliban and al-Qaida terrorists" and that petitioners Banderas, Bennett, and Idema were "under siege in the Block 2 Annex of the prison." Mot. for TRO and Other Relief and Rule 60 Mot. at 1. Petitioners also alleged that the United States Departments of Justice and State "maliciously and wrongfully ordered Afghan forces not to make a rescue attempt." *Id.* at 2. Petitioners sought an emergency temporary order (1) preventing respondents and their agents from interfering in the ongoing siege at Pulacharke Prison; (2) preventing respondents and their agents from withholding, seizing, or returning relief parcels and mail sent to and from the men under siege at Pulacharke; (3) directing respondents to accept and expeditiously send mail to petitioners for at least 15 days after the siege ends; and (4) directing FBI agents to remove themselves from Pulacharke Prison. *Id.* at 3. On March 9, 2006, respondents filed their opposition stating that the prison uprising ended on the day the petitioners filed their motion. *See* Respondents' Opp'n to Petitioners' Mot. for TRO and Other Relief and Rule 60 Mot. at 5 (citing news articles stating that the prison siege was over).

The portion of petitioners' motion seeking a temporary restraining order is now moot. Petitioners have not refuted the fact that the prison siege ended soon after it started. Moreover, petitioner Caraballo returned to the United States at the end of April 2006 and was present at a hearing before this Court on May 4, 2006. Even if the siege were still ongoing, the petitioners have provided no authority and the Court is aware of none that would allow it to grant any of the relief requested by petitioners in their motion.

■ In addition to requesting a temporary restraining order, petitioners raise numerous other arguments for various forms of relief. First, petitioners request an order transferring this case back to the Southern District of New York. This Court agrees with Judge Hellerstein's May 18, 2005 Order transferring venue of this case from the Southern District of New York to the District Court for the District of Columbia. *See Idema, et al. v. Rice, et al.,* No. 05–2947 (S.D.N.Y. May 18, 2005) (order denying motion to dismiss and trans-

---

5. In their Supplemental Brief Addressing Jurisdiction, respondents argue that the Court lacks jurisdiction and further state that:

In the event the Court determines that it cannot reach this conclusion based on the record before it, the Government's factual silence should not be a basis for a finding of jurisdiction. Instead, respondents should be afforded an opportunity to respond to the petition before this Court takes any other actions.

Supplemental Br. Addressing Jurisdiction [Dkt. No. 40] at 10.

ferring venue). Petitioners filed a very similar motion to the one at issue here on May 23, 2005 in the Southern District of New York. *See* Petitioners' Reply to Respondents' Mot. to Dismiss, and Petitioners' Mot. to Amend, or in the Alternative Petitioners' Rule 60 Mot., *Idema*, No. 05–2947 (S.D.N.Y. May 23, 2005). Judge Hellerstein treated the motion as one for reconsideration of his order transferring the case and denied it. *See Idema*, No. 05–2947 (S.D.N.Y. June 1, 2005) (order denying motion for reconsideration). This Court sees no reason to revisit this issue at this time. Moreover, this case has proceeded in this Court for over a year and petitioners' frequent filings in this Court suggest that they have abandoned any argument that this Court is not the proper jurisdiction to consider their claims.

■ Petitioners further argue that they have a right to amend their habeas petition but should not be required to do so. This Court directed Mr. John Edwards Tiffany, on behalf of Idema only, to file an Amended Habeas Petition by February 9, 2006. *See Idema, et al. v. Rice, et al.*, No. 05–2064 (D.D.C. Jan. 19, 2006) (Order). Petitioner Idema objected to this Order stating that petitioners should not be forced to separate their claims. *See* Letter from John E. Tiffany to Judge Emmet G. Sullivan (Feb. 9, 2006) [Dkt. No. 5]. Because the habeas claims are now moot as to all petitioners except Idema, the Court will not require Idema to file an amended petition at this time.

Petitioners further argue that respondents should be barred from filing any further motions to dismiss. To date, respondents have never filed a motion to dismiss in this Court. Any motions respondents or petitioners wish to file will be governed by the Federal Rules of Civil Procedure and applicable case law.

■ Finally, petitioners seek a second temporary restraining order (1) barring the United States government from intercepting, delaying, obstructing, or refusing mail between petitioners and their attorneys family and friends; (2) ordering respondents to cease and desist their privacy violations and violations of attorney-client privilege; and (3) ordering respondents to provide drinking water, medicine and relief packages to petitioners. Respondents counter that none of the relief requested by this portion of the motion in any way relates to petitioners' liberty and that habeas petitions are not the proper means to challenge conditions of confinement. This Court agrees with respondents that a habeas petition is not the proper vehicle to challenge either conditions of confinement or the provision of consular services to Americans abroad. *See Brown v. Plaut*, 131 F.3d 163, 167–68 (D.C.Cir.1997).

For the reasons discussed above, Petitioners' Motion for Temporary Restraining Order and Other Relief and Rule 60 Motion is denied.

### 2. Second Motion for TRO

On September 28, 2006, petitioners Idema and Bennett moved for an Emergency Temporary Restraining Order. *See* Life & Death Emergency Mot. [Dkt. No. 26]. Petitioners allege that, at some point in mid-September 2006, the United States Consul ordered the Pulacharke Prison Commandant to use deadly physical force to take Bennett into custody and deliver him to U.S. custody. At the time the motion was filed, petitioners claimed that Bennett had been forcibly separated from Idema during a dinner and placed in the al-Qaida section of the prison where he was expected to be beaten and tortured by Karzai's Intelligence agents. Idema was allegedly barricaded in and holding off forces "under the direct control and command of the United

States Embassy in Afghanistan, specifically the U.S. Consul." *Id.* at 2. Petitioners requested a temporary restraining order preventing respondents and their agents from interfering in the ongoing siege at Pulacharke Prison, ordering respondents and their agents to direct their forces to place Idema and Bennett together back in their initial area of confinement, ordering the U.S. Consul to withdraw the apprehend and kill order for both Idema and Bennett, and directing United States agents to remove themselves from Pulacharke Prison.

■ The Court ordered an immediate response from the government. On September 29, 2006, the government filed an opposition brief and declaration from the United States Consul in Afghanistan. The respondents argued that petitioners provided no support for their factual assertions and that those factual assertions were false. Given the widely varying accounts of what was occurring at the Pulacharke prison, the Court ordered the petitioners to file an immediate reply to the respondents' opposition brief. On October 2 and 3, Idema and Bennett filed affidavits with the Court indicating that the prison siege had ended by September 29 and that Bennett was no longer in Afghanistan nor was he in United States custody. *See* Oct. 2, 2006 Idema Aff. ¶¶ 14–15; Oct. 3, 2006 Bennett Aff. In other words, the motion for a temporary restraining order was already moot when these affidavits were filed. Accordingly, the motion is denied.

## D. Remaining Motions

### 1. Notice of Objections and Motion to Compel

■ On March 3, 2006, petitioner Idema filed a Notice of Objections and Motion to Compel [Dkt. No. 12]. He asked the Court to take notice of the Clerk's failure to file and docket *pro se* motions to appoint

counsel and obtain transcripts submitted by Bennett and Banderas. However, the docket reflects that a motion for expedited copies of transcripts [Dkt. No. 10] and a motion to appoint counsel [Dkt. No. 11] were both filed and docketed on February 27, 2006. There is no indication that the Clerk of the Court failed to docket any other filings received. Therefore, this motion is denied as moot.

### 2. Motion for Reconsideration and Clarification of July 14 Minute Order

On July 14, 2006, the Court issued the following Minute Order:

MINUTE ORDER granting [10] Motion for Expedited Copies of Transcripts. The Court hereby notes the government's objections, and orders that the transcript of the January 19, 2006 hearing be mailed to the following address for petitioners Bennett and Banderas: Consular Section, United States Embassy, Great Massoud Road, Kabul, Afghanistan. Further, the mail should be placed in two envelopes—the outside envelope should contain the above address without the petitioners' names, and the inside envelope should contain the petitioners' names. Further, petitioner Caraballo's copy should be mailed to the address noted on the docket. Signed by Judge Emmet G. Sullivan on July 14, 2006. (lcegs2) (Entered: 07/14/2006).

■ On July 28, 2006, the respondents filed a Motion for Reconsideration and Clarification of July 14 Minute Order [Dkt. No. 23]. Respondents ask the Court to reconsider its Order to the extent that the Order directs the transcript to be mailed to petitioner Banderas care of the United States Embassy. Respondents argue that American embassies often provide mail service to incarcerated Americans around

the world but that such accommodation is both discretionary and limited to American citizens. Respondents also seek clarification on whether they are being asked to mail a copy of the transcript to petitioner Bennett. Because Banderas and Bennett are no longer incarcerated at Pulacharke Prison, this motion is denied as moot.

## III. CONCLUSION

For the foregoing reasons, the Court dismisses the habeas claims of Bennett, Caraballo, and Banderas as moot. The Court orders respondents to address petitioners' factual allegations and show cause why a writ of habeas corpus should not be issued as to petitioner Idema. Finally, the Court denies all other pending motions. An appropriate order accompanies this Memorandum Opinion.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the habeas claims of petitioners Brent Bennett, Edward Caraballo, and Zorro Rasuli Banderas are **DISMISSED AS MOOT**; and it is

**FURTHER ORDERED** that the respondents shall respond to petitioners' factual allegations and show cause why this Court should not grant a writ of habeas corpus to petitioner Idema by **April 10, 2007**; and it is

**FURTHER ORDERED** that petitioners' Motion for Temporary Restraining Order and Other Relief and Rule 60 Motion [Dkt. No. 7] is **DENIED**; and it is

**FURTHER ORDERED** that petitioners' Life & Death Emergency Motion [Dkt. No. 26] is **DENIED AS MOOT**; and it is

**FURTHER ORDERED** that petitioners' Notice of Objections and Motion to Compel [Dkt. No. 12] is **DENIED AS MOOT**; and it is

**FURTHER ORDERED** that respondents' Motion for Reconsideration and Clarification of July 14 Minute Order [Dkt. No. 23] is **DENIED AS MOOT**.

**SO ORDERED.**