838 A.2d 684

**William FINNEGAN, Appellant**

v.

**PENNSYLVANIA BOARD OF PROBATION
AND PAROLE, Appellee.**

Supreme Court of Pennsylvania.

Submitted May 28, 2002.

Decided Dec. 18, 2003.

60

William Finnegan, Pro se.

Linda L. Laub, Etters, Robert Campolongo, Harrisburg, for Probation and Parole Board.

Before CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, LAMB, JJ.

## *OPINION*

Justice EAKIN.

In 1986, appellant was sentenced to 15 to 30 years incarceration for six counts of robbery, burglary, and criminal conspiracy. He was eligible for parole March 28, 2001, but after a hearing, the Pennsylvania Board of Probation and Parole refused to grant him parole on the grounds that "[t]he fair administration of justice [could not] be achieved through [appellant's] release on parole." Notice, 12/4/00. Appellant filed a *pro se* petition for a writ of mandamus in the Commonwealth Court seeking to compel the Board to apply the versions of the Parole Act, 61 P.S. §§ 331.1–331.4, and the parole guidelines existing at the time of his conviction. The Commonwealth Court dismissed the petition, holding mandamus was not available to compel discretionary acts, such as the grant of parole.

Mandamus is an extraordinary remedy designed to compel the performance of a ministerial act or mandatory duty on the part of a governmental body. *Bronson v. Cmwlth. Bd. of Probation & Parole,* 491 Pa. 549, 421 A.2d 1021, 1023 (1980). There must be (1) a clear legal right in the plaintiff, (2) a corresponding duty in the governmental body, and (3) the absence of any other adequate and appropriate remedy. *Id.* Further, mandamus will not lie to compel a discretionary act, nor will it restrain official activities. *Id.*

"A proceeding in mandamus is available to compel the Board of Probation and Parole to conduct a hearing or correct a mistake in applying the *law.*" *Id.* (emphasis added). However, appellant does not possess a legal right to parole. *See Rogers v. Penns. Bd. of Prob. and Parole,* 555 Pa. 285, 724 A.2d 319, 321 (1999). Nor is the Board required to grant parole; it has broad discretion in parole matters. *Id.; see also Commonwealth v. Vladyka,* 425 Pa. 603, 229 A.2d 920 (1967). Thus, two of the three requirements for a writ of mandamus are absent: appellant has no right to parole, and the Board has no duty to grant it. This matter is clearly within the discretion of the Board, and "while [this] court may direct that discretion be exercised, it may not specify how that discretion is to be exercised nor require the performance of a particular discretionary act." *Pennsylvania Dental Ass'n v. Cmwlth. Ins. Dept.,* 512 Pa. 217, 516 A.2d 647, 652 (1986).

Thus, mandamus will not lie where the substance of the board's discretionary action is the subject of the challenge. Where, however, discretionary actions and criteria are not being contested but rather the actions of the board taken pursuant to changed statutory requirements are being challenged, an action for mandamus remains viable as a means for examining whether statutory requirements have been altered in a manner that violates the *ex post facto* clause. Such an action could be brought in the original jurisdiction of the Commonwealth Court. Absent a change in the statutes governing parole, however, denial of parole would generally constitute a discretionary matter that is not subject to review.

*Coady v. Vaughn,* 564 Pa. 604, 770 A.2d 287, 290 (2001) (citation omitted). As appellant argues certain revisions to the Parole Act violate the *ex post facto* clause of the United States Constitution,[1] mandamus is the proper avenue for seeking relief, *id.;* however, we conclude his claim is meritless.

Appellant contends the 1996 changes to § 331.1 of the Parole Act made it more difficult for him to be paroled than the version of § 331.1 in effect at the time of his conviction, thus violating the *ex post facto* clause. This same issue was recently raised, through a habeas corpus petition, in *Winklespecht v. Bd. of Probation and Parole,* 571 Pa. 685, 813 A.2d 688 (2002) (plurality) (retroactive application of 1996 changes to § 331.1 was not *ex post facto* violation; question of propriety of habeas corpus as remedy was not reached).[2]

The 1996 version of § 331.1 reads:

The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison. In providing these benefits to the criminal justice system, the board shall first and foremost seek to *protect the safety of the public.* In addition to this goal, the board shall address input by crime victims and *assist in the fair administration of justice* by ensuring the custody, control and treatment of paroled offenders.

61 P.S. § 331.1 (emphasis added).

The prior version of § 331.1 read:

The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be

1. Article I, § 10 of the United States Constitution provides, "No State shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts...." U.S. Const. art. I, § 10.

2. Although *Winklespecht* was a plurality opinion, four of the seven Justices were in agreement that Winklespecht's constitutional *ex post facto* claim concerning § 331.1 was meritless; the Court remained divided over the issue of habeas corpus as an avenue of relief for *ex post facto* claims.

the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

Act 1941, Aug. 6, P.L. 861, § 1.

The United States Supreme Court has observed:

One function of the *Ex Post Facto* Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission. Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept. Whether retroactive application of a particular change in parole law respects the prohibition on *ex post facto* legislation is often a question of particular difficulty when the discretion vested in a parole board is taken into account.

\* \* \*

[T]o the extent there inheres in *ex post facto* doctrine some idea of actual or constructive notice to the criminal before commission of the offense of the penalty for the transgression we can say with some assurance that where parole is concerned discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised. The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk of recidivism consequent upon the offender's release, along with a complex of other factors, will inform parole decisions.

*Garner v. Jones,* 529 U.S. 244, 249–50, 253, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000).

Here, the revision of 61 P.S. § 331.1 did not create any new offense or increase the penalty for an existing offense. *See California Dep't. of Corrections v. Morales,* 514 U.S. 499, 506 n. 3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) ("the focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' nor, ... on whether an amendment affects a prisoner's *'opportunity* to take advantages of provisions for early release'...."). Although the phrases "protect the safety of the public" and "assist in the fair administration of justice" were added in 1996, these concepts have always been underlying concerns. Both versions of § 331.1 leave the grant of parole within the discretion of the Board. Adding language which clarified the policy underlying the parole process does not make appellant's punishment more severe; his maximum sentence remains the same. *See Prater v. U.S. Parole Com.,* 802 F.2d 948, 952 (7th Cir.1986) ("If ... the Parole Commission takes a more jaundiced view of applications for parole, the *ex post facto* prohibition is not violated, even though a criminal's punishment may end up being longer or harsher than he hoped when he committed the crime.").

The Third Circuit recently held the 1996 changes to § 331.1 violated the *ex post facto* clause, where the prisoner who sought parole had been serving a life sentence that was commuted. *See Mickens–Thomas v. Vaughn,* 321 F.3d 374 (3d Cir.2003). In *Mickens–Thomas,* the Pardons Board recommended commutation of Thomas' life sentence to the Pennsylvania governor, who agreed, and commuted the sentence to a minimum term of time served with a maximum of life. *See Mickens–Thomas v. Cmwlth. Bd. of Prob. and Parole,* 699 A.2d 792, 794 (Pa.Cmwlth.1997). This made Thomas immediately eligible for parole. *See* Pa. Const. art. IV, § 9(a). However, he was denied parole in 1997, 1998, and 2000. Thomas sought relief in federal court by application for a writ of habeas corpus. The district court held the changes to § 331.1 violated the *ex post facto* clause, and remanded for the Board to apply its pre–1996 policies to Thomas' case. The Board appealed to the Third Circuit, which opined Thomas

had a liberty interest in receiving parole, and that interest was adversely affected by the amendment of § 331.1; the court concluded:

> Pre–1996, a prisoner could be denied parole because of public safety concerns only if those concerns together with other relevant factors outweighed, by a preponderance, the liberty interests of the inmate. The 1996 policy change placed first and foremost the public safety to the disadvantage of the remaining liberty interest of the prisoner.

*Mickens–Thomas*, at 385. The court further observed:

> The statistical evidence is quite staggering here, and strongly confirms the change in policy in 1996: of the 266 historical instances of commuted sentences on which the Board has kept records, all were granted parole on the first or second application. Many, if not most, of these original sentences were for violent crimes. Doubtless, these earlier Parole Boards spanned a wide spectrum of political and penological philosophies. Yet, the gubernatorial grant of commutation of sentence had such significance that the Board agreed to parole every commutee on his or her first or second application. The Thomas application is distinguished from these 266 cases only by the intervening policy directive of 1996, emphasizing public safety.

*Id.*

The Third Circuit noted, however, that at the time the Board reviewed Thomas' parole application, *Winklespecht* had not yet been decided. Therefore, without the benefit of guidance from *Winklespecht*, the Board "interpreted § 331.1 to mandate foremost the consideration of public safety ... [and] mistakenly construed the 1996 statutory change to signify a substantive change in its parole function." *Mickens–Thomas*, at 391; *see also Winklespecht*, at 692 ("Reordering of considerations for necessary decisions within an unchanged penalty do not rise to an *ex post facto* violation."). Further, *Mickens–Thomas* concerned the issue of greater emphasis being given to the public safety factor in the parole decision, whereas public safety was not even a factor mentioned as a basis for the denial of parole in appellant's case. Thus, we are

not bound by the Third Circuit's decision. *See Commonwealth v. Chester*, 557 Pa. 358, 733 A.2d 1242, 1256 (1999) (although state supreme court may look to decisions of intermediate federal courts in interpreting federal case law, those decisions are not binding on state supreme court). We reiterate that the 1996 revision of § 331.1 of the Parole Act does not violate the *ex post facto* clause when applied to a prisoner convicted prior to the revision. Because there has been no *ex post facto* violation, appellant is not entitled to mandamus as a means to compel application of the former version of § 331.1.

In a footnote to his argument, appellant argues the Board's policy regarding the number of votes required for parole of violent offenders, adopted in 1995, also violates the *ex post facto* clause. At the time appellant was sentenced, 61 P.S. § 331.4(b) required two votes in favor of parole; the 1995 revision changed the number to three votes for parole of violent offenders. This issue was addressed in *Myers v. Ridge*, 712 A.2d 791 (Pa.Cmwlth.1998), *appeal denied*, 560 Pa. 677, 742 A.2d 173 (1999), in which the Commonwealth Court reasoned although the three-vote requirement may have appeared to make it more difficult for violent offenders to be paroled, it did not alter the criteria the Board applied to determine parole eligibility, nor did it affect the prisoner's original sentence. *Id.*, at 798. The actual voting requirements were left to the Board's discretion, and the three-vote requirement was merely a procedural change which was held not to be an *ex post facto* violation. *Id.* The reasoning and holding in *Myers* remains valid, and is dispositive of appellant's argument; he is not entitled to mandamus relief on this basis.

Appellant also asserts the new parole guidelines adopted by the Board in 1990, which dramatically decreased Pennsylvania's rate of parole releases, violate the *ex post facto* clause as applied to him. Appellant alleges he would have been presumptively eligible for parole under the former guide-

lines in effect at the time of his conviction, but was presumptively ineligible under the new guidelines.[3]

Appellant mistakenly equates the Board's guidelines with laws for purposes of *ex post facto* analysis. To the contrary, the guidelines have not been promulgated pursuant to the notice and comment procedures in the Commonwealth Documents Law, 45 Pa.C.S. § 501 *et seq.*, and the Regulatory Review Act, 71 P.S. §§ 745.1–745.12, and thus do not have the force and effect of law.[4] They are, as titled, *guidelines* for the Board's assessment of a prisoner's parole application, and are purely an aid for the Board's exercise of its discretion. *See, e.g., Eighty–Four Mining Co. v. Three Rivers Rehabilitation Inc.*, 554 Pa. 443, 721 A.2d 1061, 1066 (1998) (general statement of agency policy does not establish binding norm upon agency).

Accordingly, the *ex post facto* clause does not apply to the parole guidelines, and mandamus relief is not available.

The Commonwealth Court's order is affirmed.

Justice SAYLOR files a dissenting opinion in which Chief Justice CAPPY and Justice NIGRO join.

Justice SAYLOR, Dissenting.

The majority employs the recent plurality decision in *Winklespecht v. Pennsylvania Bd. of Probation and Parole*, 571 Pa. 685, 813 A.2d 688 (2002), to suggest that there was a majority consensus on the Court for a matter-of-law determination that

---

**3.** Under the former guidelines, three or more unfavorable points rendered a prisoner presumptively ineligible for parole. Violent crime offenders automatically received two unfavorable points, and no points were assigned for substance abuse. The new guidelines render a prisoner with seven or more unfavorable points presumptively ineligible for parole. Violent crime offenders automatically receive five points, and two points are assigned for substance abuse. Appellant, as a violent crime offender and substance abuser, would have had two points under the old guidelines, making him presumptively eligible; under the new guidelines, he has seven points, making him presumptively ineligible.

**4.** Indeed, appellant neither cites to the current or previous version of the guidelines, nor does the record contain such.

the 1996 revision of Section 331.1 of the Parole Act does not violate constitutional *ex post facto* precepts when applied to a prisoner convicted prior to revision. *See* Majority Opinion, 576 Pa. at 64 n. 2, 838 A.2d at 687 n. 2. In fact, my reasoning as one of the four Justices counted as comprising a *Winklespecht* majority rested on a substantially narrower ground. *See Winklespecht*, 571 Pa. at 700, 813 A.2d at 697 (Saylor, J., concurring and dissenting) ("absent some evidence of a systemic change in the rate at which the Board grants parole, or other proof regarding changes in parole frequency following the 1996 amendment, Petitioner cannot carry his burden of establishing that the Constitution has been violated."); *accord* 59 AM.JUR.2D PARDON AND PAROLE § 81 (2003) ("When the rule governing the parole of prisoners does not by its own terms show a significant risk of increased punishment, the party seeking to demonstrate an *ex post facto* violation based on retroactive application of the rule must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration for that party than under the earlier rule."). Significantly, in this case, however, Appellant has averred in his mandamus petition evidence of such a systematic change,[1] resulting from the statutory amendments and associated modifications to the Board's parole guidelines.[2]

Appellant's entitlement to a hearing on such averment is confirmed by the United States Supreme Court's decision

---

1. Citing *Commonwealth v. Stark*, 698 A.2d 1327, 1332 (Pa.Super.1997), Appellant asserted that:

> [I]n 1991, eighty percent of state prisoners were released on parole at the completion of their minimum sentences. By contrast, in the first quarter of 1996, only twenty-nine percent of prisoners were released at the expiration of their minimum sentences.

Petition for Mandamus at ¶ 18. In *Stark*, the Superior Court acknowledged such statistical findings in addressing whether a defendant was entitled to withdraw his guilty plea based upon same changes in the state parole system at issue here. *See id.* at 1328–29.

2. The Board's guidelines and internal policies are relevant in determining whether the statutory amendments "creat[ed] a significant risk of prolonging [Appellant's] incarceration." *Garner v. Jones*, 529 U.S. 244, 256, 120 S.Ct. 1362, 1370–71, 146 L.Ed.2d 236 (2000).

cited by the majority, *Garner v. Jones,* 529 U.S. 244, 256, 120 S.Ct. 1362, 1370–71, 146 L.Ed.2d 236 (2000), which concerned an *ex post facto* challenge to a state parole board's modification of its rules governing the timing of reconsideration of parole decisions for inmates serving life sentences. *See id.* at 247, 120 S.Ct. at 1366. While the majority emphasizes portions of *Garner* that afford context to the Supreme Court's holding, *see* Majority Opinion, 576 Pa. at 65, 838 A.2d at 688, it overlooks that *Garner* resulted in a remand for a hearing to address factual averments concerning the incidence of favorable parole determinations analogous to those presently before this Court. *See Garner,* 529 U.S. at 255–56, 120 S.Ct. at 1370–71 (emphasizing the need for evidence respecting the practical implementation of the parole rule and remanding to allow the respondent an opportunity to develop such proof). In the face of *Garner,* the majority's controlling reliance on the discretionary aspect of parole decisions is unjustified. *See generally* 59 Am.Jur.2d Pardon and Parole § 81 ("Caution: Cases preceding the Supreme Court's decision in the *Garner* case often relied on the rationale that parole laws are not penal laws, and do not increase punishment, but are merely procedural rules to aid a parole board in exercise of its discretion, and so are not subject to *ex post facto* clause. As a result of the Supreme Court decision, this rationale is no longer applicable.").

Since I am unable to meaningfully distinguish *Garner* on the federal constitutional question presently before the Court, I respectfully dissent in favor of a remand for hearing on the substantive allegations of the petition.

Chief Justice CAPPY and Justice NIGRO join this dissenting opinion.