

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-8-2005

# Parker v. Kelchner

Precedential or Non-Precedential: Precedential

Docket No. 04-3286

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Parker v. Kelchner" (2005). *2005 Decisions.* Paper 186.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/186

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 04-3286

————

SHAWN PARKER,

v.

DONALD KELCHNER, Superintendent;
ATTORNEY GENERAL OF PENNSYLVANIA,

Appellants.

————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 04-CV-0837)
Magistrate Judge: Honorable Thomas M. Blewitt

————

Argued: October 19, 2005

Before: SCIRICA, Chief Judge, VAN ANTWERPEN and
ALIDISERT, Circuit Judges.

(Filed: November 8, 2005)

John G. Knorr, III (Argued)
Thomas W. Corbett, Jr.
Francis R. Filipi
Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120

*Counsel for Appellants Donald Kelchner and the Attorney General of Pennsylvania*

Linda J. Shorey
Amy L. Groff (Argued)
David R. Fine
Kirkpatrick & Lockhart Nicholson Graham LLP
17 North Second Street, 18th Floor
Harrisburg, PA 17101

*Counsel for Appellee Shawn Parker*

---

OPINION OF THE COURT

---

VAN ANTWERPEN, <u>Circuit Judge</u>.

Before us is an appeal from an order of the District Court granting habeas corpus relief to Appellee Shawn Parker, a prisoner in the custody of the Commonwealth of Pennsylvania.[1] Without first raising the claim in state court, Parker argued to the District Court in his habeas petition that the Pennsylvania Board of Probation and Parole (the "Board") had, in denying him parole in 2003, applied the 1996 version of the Pennsylvania Parole Act (the "Parole Act") to his case for acts he committed before the enactment of that version of the Parole Act. Parker argued that the Board's application of this newer version of the Parole Act to his case violated the Ex Post Facto Clause of the United States

---

[1]Before the oral argument in this case took place on October 19, 2005, counsel informed us that the Pennsylvania Board of Probation and Parole had elected to grant Parker parole to a halfway house. Because at the time of this writing it is unknown what conditions, if any, the Board will impose on Parker, we will leave to the District Court to determine whether subsequent events render this matter moot.

2

Constitution.  See U.S. Const. art. I, § 10.  The District Court agreed and granted Parker's petition.

Appellants Donald Kelchner and the Attorney General of the Commonwealth of Pennsylvania argue that the District Court erred by reaching the merits of Parker's claim and concluding that the Parole Board improperly applied amendments to the Pennsylvania Parole Act in violation of the Ex Post Facto Clause because Parker never presented his claim in state court.

We have jurisdiction over this timely appeal by virtue of 28 U.S.C. § 1291.  We exercise plenary review in a habeas proceeding over the district court's legal conclusions and review its factual findings for clear error.  Mickens-Thomas v. Vaughn, 321 F.3d 374, 376 (3d Cir. 2003).  Because we conclude that Parker's failure to raise his claim in state court before filing his federal habeas petition rendered that claim unexhausted and therefore unreviewable by the District Court, we will vacate the grant of the writ and remand to the District Court.

I.

Because it is the Board's most recent parole decision that is at issue in this case, we recount Parker's criminal and parole history only briefly.  Parker was convicted of robbery and burglary in September, 1983, and began serving aggregate sentences of three to fifteen years.  Although his maximum term was originally to have expired in September, 1998, Parker has been repeatedly paroled then returned to prison for various offenses.  As a result, Parker lost credit for the time he was out on parole, and the expiration of his maximum term was advanced to April, 2009.

On September 25, 2003, in its most recent parole decision, the Board refused parole to Parker.  Parker then filed a petition for a writ of habeas corpus on April 19, 2004, in the United States District Court for the Middle District of Pennsylvania, in which he challenged that decision.  In his petition, Parker argued that in its September 25, 2003, decision, the Board applied the new 1996 version of the Parole Act which allegedly created a new standard under which the Board was to evaluate parole applications.  Parker

3

claims this new standard is different than the standard that was in effect at the time of his 1983 conviction.[2]  Parker claimed that this

[2] From its enactment in 1941 until 1996, Section 1 of the Parole Act read as follows:

> "The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth."

Act of August 6, 1941, P. L. 861, § 1, *formerly codified* at Pa. Stat. Ann., tit. 61, § 331.1 (Purdon).  In 1996, Section 1 was amended to read:

> "The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison.
>
> In providing these benefits to the criminal justice system, the board shall first and foremost seek to protect the safety of the

4

application of the 1996 Parole Act to his case violated the Ex Post Facto Clause of the United States Constitution.

Parker did not, however, pursue his ex post facto claim in state court before filing his federal habeas petition. In his federal habeas petition, Parker stated that he believed that presenting his claim in state court would have been a "fruitless effort" because the Pennsylvania Supreme Court had rejected claims similar to his in Winklespecht v. Pennsylvania Board of Probation and Parole, 813 A.2d 688 (Pa. 2002). The matter was then transferred by consent of the parties[3] to United States Magistrate Judge Thomas M. Blewitt, who, on August 5, 2004, granted Parker's petition.

In its decision, the District Court first concluded that although Parker had not presented his claims in state court, and despite the exhaustion requirement of 28 U.S.C. § 2254(b)(1)(A), his failure to exhaust his remedies in state court did not bar review of his claim in federal court. The District Court reasoned that because the state case law at the time of Parker's petition was unfavorable to his claim, it would have been futile for him to present his claim in state court and he was therefore excused from the requirement of § 2254(b)(1)(A) that he exhaust his claim in state court before filing his federal habeas petition. Addressing the merits of Parker's claim, the District Court determined that the 1996 Amendments to the Parole Act had changed the criteria for release and that the retroactive application of the 1996 Amendments to Parker violated the Ex Post Facto Clause. The District Court then granted Parker's petition and ordered the Board

---

public. In addition to this goal, the board shall address input by crime victims and assist in the fair administration of justice by ensuring the custody, control and treatment of paroled offenders."

Pa. Stat. Ann., tit. 61, § 331.1, *as amended* by Act of December 18, 1996, P. L. 1098, No. 164, § 1.

[3]The parties consented to have the Magistrate Judge conduct all proceedings and enter judgment pursuant to 28 U.S.C. § 636(c).

to re-adjudicate Parker's parole application under the Parole Act's pre-1996 standards. The Commonwealth filed this appeal and the District Court stayed its order pending the outcome of this appeal.

## II.

An individual imprisoned by the Commonwealth of Pennsylvania may challenge the denial of his or her parole on Ex Post Facto grounds by bringing an action for mandamus in state court. Coady v. Vaughn, 251 F.3d 480, 489 (3d Cir. 2001). Although Parker did not raise such any challenge in state court, he argues that the District Court properly concluded that he was excused from doing so because such action would have been futile. Appellants argue that Parker's petition should have been dismissed for failure to exhaust. We agree.

Under the federal habeas corpus statute, habeas relief

"shall not be granted" to a petitioner in custody pursuant to a state court judgment unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C.

§ 2254(b)(1)(A). Exhaustion "addresses federalism and comity concerns by 'affording the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" Toulson v. Beyer, 987 F.2d 984, 986 (3d Cir. 1993) (quoting Vasquez v. Hillery, 474 U.S. 254, 257 (1986)). As the Second Circuit explained in Jones v. Keane,

"The exhaustion requirement springs primarily from considerations of comity between the federal and state judicial systems. By requiring exhaustion, federal courts recognize that state courts, no less than federal courts, are bound to safeguard the federal rights of state criminal defendants. Besides serving to minimize friction between our federal and state systems of justice, the

6

> exhaustion requirement has the salutary practical effect of enhancing the familiarity of state courts with federal constitutional issues."

329 F.3d 290, 295 (2d Cir. 2003) (citations and internal quotation marks omitted). "The exhaustion requirement is not one to be overlooked lightly." Rutherford v. Neet, 149 F.3d 1191, 1191 (10th Cir. 1998) (citation omitted).

The habeas statute makes clear that a petitioner does not exhaust his state remedies if "he has the right under the law of the state to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). An exception to the exhaustion requirement exists, however, when there is no corrective State process available or existing circumstances render such process ineffective to protect the petitioner's rights. See 28 U.S.C. § 2254(b)(1)(B)(i) & (ii). "The habeas petitioner carries the burden of proving exhaustion of all available state remedies." Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). This Court has found the exhaustion requirement satisfied when a state's procedural rules prevent a petitioner from seeking further relief in the state courts. Whitney v. Horn, 280 F.3d 240, 250 (3d Cir. 2002); Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000).[4]

---

[4]The District Court relied on § 2254(b)(1)(B) in concluding that because of unfavorable state case law, Parker was not required to present his claim in state court. See District Court Slip Op. at *7. We think that reliance was misplaced: although the District Court failed to specify whether it was relying on § 2254(b)(1)(B)(i) (excusing exhaustion for claims that are barred because petitioner failed to comply with state procedural rules) or (ii) (excusing exhaustion where state court procedure necessary to obtain relief sought by petitioner does not exist), Parker does not claim that he failed to comply with applicable Pennsylvania court rules or that the specific state court procedure needed to grant the relief that he seeks does not exist in Pennsylvania.

7

In this case, however, Parker does not claim to face a procedural barrier to bringing his claim in state court. Rather, he argues that the state's highest court has repeatedly denied claims identical to his own on the merits. He argues that the futility doctrine should be extended to cases such as his where there appears to be no possibility of success on the merits of his claim in state court.

To answer the question whether the futility of a claim on the merits renders that claim exhausted, we begin with the Supreme Court's decision in Engle v. Isaac, 456 U.S. 107 (1982). In that case, the Court addressed the question – analogous to the question presented in this case – whether a petitioner who had procedurally defaulted a claim in state court could prove "cause" to excuse his default if his claim would have been futile on the merits in state court. 456 U.S. at 130; see also Minter v. Beck, 230 F.3d 663, 666 (4th Cir. 2000) (applying Engle to question whether failure to present claim in state court because of inability to obtain "successful result" in state court was grounds for excusing failure to exhaust claim).

The habeas petitioners in Engle had forfeited their objection to a jury instruction by failing to object to the instruction at trial. Id. at 112-17. Addressing the question whether the petitioners' failure to raise their claim in state court before raising the claim in their federal habeas petitions rendered the claim unexhausted, the Court stated:

> "We note at the outset that the futility of presenting an objection to the state courts cannot alone constitute cause for a failure to object at trial. If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid."

8

Id. at 130. The Court went on to state that futility on the merits did not constitute cause for failure to raise a claim in state court merely when the claim "was unacceptable to that particular court at that particular time." Id. at n.35 (citations and quotation marks omitted).

Our sister Circuits that have considered the issue have similarly concluded that the exhaustion requirement is not excused merely because a petitioner's claim will likely be denied on the merits in state court. See Jones, 329 F.3d at 295 ("[T]he fact that the [state court] may have been unlikely to grant habeas relief on his [constitutional claim] does not cure his failure to have raised it in state courts."); Minter, 230 F.3d at 666 (refusing to excuse failure to raise claim in state court, observing that while effort to obtain state court relief may have been "incapable of producing a successful result, the effort [of raising the claim in state court] was still possible"); Scott v. Mitchell, 209 F.3d 854, 871 (6th Cir. 2000) (observing that Supreme Court has rejected argument that claim's futility on the merits excuses failure to raise claim in state court); White v. Peters, 990 F.2d 338, 342 (7th Cir. 1993) ("Federal-state comity demands that a habeas petitioner first give the state courts an opportunity to pass on his federal claims, even if those courts would be expected to view such claims unfavorably."); Roberts v. Arave, 847 F.2d 528, 530 (9th Cir. 1988) (concluding that "apparent futility" of presenting claims in state court did not excuse failure to do so); Waldrop v. Jones, 77 F.3d 1308, 1315 (11th Cir. 1996) (declining to excuse failure to exhaust claims in state court; "[e]ven if it was unlikely that [petitioner's] claim would have been well-received in state court, [petitioner] should have presented it").

We acknowledge that there is a concurring opinion in this Circuit for that favors extension of the futility doctrine to cases in which the state court has ruled adversely on a similar claim. See DeFoy v. McCullough, 393 F.3d 439, 448 (3d Cir. 2005) (Weis, J., concurring) ("The exhaustion of state remedies requirement is excused when resort to the state courts would be futile.") The United States Supreme Court has also arguably lent some support to this interpretation of the futility doctrine:

9

"Petitioner did not advance his ex post facto claim in state court. In the District Court respondents challenged his failure to exhaust his state remedies, but do not appear to have raised the exhaustion issue in the Court of Appeals; nor have they raised it in this Court. Presumably they are satisfied, as we are, that exhaustion would have been futile.

Lynce v. Mathis, 519 U.S. 433, 436 n.3 (1997).

While we acknowledge Lynce and Judge Weis's concurring opinion in DeFoy, we agree with our sister Circuits that have reasoned that likely futility on the merits does not excuse a failure to exhaust a claim in state court. Lynce is distinguishable because that case did not address the question whether futility on the merits constituted cause for default and, moreover, did not dispute the reasoning adopted in Engle that a habeas petitioner could not "bypass" the state courts on and claim exhaustion on the ground that his claim would be been denied there on the merits.

Furthermore, we do not believe that the situation upon which Judge Weis predicated his concurrence in DeFoy – that presentation of the claims at issue in state court would have been futile – is clearly present in this case. The Pennsylvania Supreme Court's willingness to repeatedly revisit the issue presented in this case demonstrates the unsettled and evolving nature of its jurisprudence on this point, and in light of the progression of that Court's decisions on this issue, we cannot agree that the outcome of Parker's claim in state court was a foregone conclusion.[5]

_____

[5]The Pennsylvania Supreme Court first addressed the ex post facto implications of the changes to the parole laws in Winklespecht v. Pennsylvania Board of Probation and Parole, 813 A.2d 688, 691 (Pa. 2002). In that case, Justice Eakin reasoned that the 1996 Amendments did not create a new offense, increase the penalty for an existing offense, or create a substantial risk that parole would be denied more frequently, and therefore it did not violate the Ex Post Facto Clause. Id. at 691-92. Winklespecht,

10

however, featured the opinions of four different judges and no clear majority opinion emerged.

Following Winklespecht, we weighed in on the Ex Post Facto question in Mickens-Thomas v. Vaughn, 321 F.3d at 392. In Mickens-Thomas, we concluded that the Parole Board interpreted the amendments to the parole statute in a way that fundamentally altered the parole application reviewing process by placing primary importance on public safety as a consideration of whether to grant parole. Id. at 384-85. The Pennsylvania Supreme Court responded in Finnegan v. Pennsylvania Board of Probation and Parole, 838 A.2d 684, 690 (Pa. 2003), recognizing our decision in Mickens-Thomas, but also noting its limited application. It then took the opportunity to "reiterate that the 1996 revision of § 331.1 of the Parole Act does not violate the ex post facto clause when applied to a prisoner convicted prior to the revision." Id.

Shortly thereafter, a plurality of the Pennsylvania Supreme Court took the opportunity in Hall v. Pennsylvania Board of Probation and Parole, 851 A.2d 859, 865 (Pa. 2004), to expressly disagree with our decision in Mickens-Thomas. Hall, however, offered no further Ex Post Facto analysis.

Most recently, the Pennsylvania Supreme Court revisited the 1996 parole amendments in Cimaszewski v. Pennsylvania Board of Probation and Parole, 868 A.2d 416, 427 (Pa. 2005). Although again fragmented, a clear majority of the court explicitly rejected Finnegan and held that "under Garner [v. Jones, 529 U.S. 244 (2000)] and [California Dept. of Corrections v.] Morales, [514 U.S. 499 (1995),] the 1996 amendment may be shown to violate the ex post facto clause if an inmate is able to demonstrate that the 1996 amendment, as applied to him, creates a significant risk of prolonging his incarceration." Id. In our recent decision in Richardson v. Pennsylvania Board of Probation and Parole, __ F.3d __, 2005 WL 215505 (3d Cir. Sept. 8, 2005), we recognized that the Cimaszewski decision had squarely answered in the affirmative that the 1996 Amendments had changed the substantive criteria for parole in Pennsylvania and that a petitioner

11

III.

We agree with our sister Circuits and hold here that likely futility on the merits (even if it were present here) in state court of a petitioner's habeas claim does not render that claim "exhausted" within the meaning of § 2254(b)(1)(A) so as to excuse the petitioner's failure to exhaust that claim by presenting it in state court before asserting in a federal habeas petition. Allowing petitioners to bypass state court merely because they believe that their constitutional claims would have failed there on the merits would fly in the face of comity and would deprive state courts of an critical opportunity to examine and refine their constitutional jurisprudence. See Engle, 456 U.S. at 128. We believe that the state courts should have been given the opportunity to review Parker's ex post facto claim, and, accordingly, we will vacate the District Court's grant of habeas corpus.

---

who could demonstrate individual disadvantage from retroactive application of the 1996 Amendments could prevail on an ex post facto claim. Id. at *8.