NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1892
_____

CHRISTOPHER M. RODLAND,
Appellant

v.

SUPERINTENDENT OF SCI HOUTZDALE; BLAIR COUNTY DISTRICT
ATTORNEY; ATTORNEY GENERAL OF THE COMMONWEALTH OF
PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 3-09-cv-00078)
District Judge:  Honorable Kim R. Gibson
_____

Submitted under Third Circuit LAR 34.1(a)
September 30, 2020

Before:  SHWARTZ, PHIPPS, and SCIRICA, *Circuit Judges*.

(Opinion Filed:  December 16, 2020)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PHIPPS, *Circuit Judge.*

In 1998, Christopher Rodland was arrested and charged with over thirty arsons in Blair County, Pennsylvania. He pleaded guilty to a number of those charges and *nolo contendere* to several others. The remaining charges proceeded to two separate jury trials, and those resulted in guilty verdicts. After receiving his sentences, Rodland's resulting aggregated prison term ranged from 25 years and four months to 76 years.

Rodland separately appealed his judgments of sentence. But those appeals were dismissed in 2002 due to failures by his court-appointed counsel, who did not file an appellate brief in the first appeal and did not file a docketing statement in the second appeal. *See Commonwealth v. Rodland*, No. 467 WDA 2001 (Pa. Super. Ct. Apr. 25, 2002) (App. 150); *Commonwealth v. Rodland*, No. 448 WDA 2002 (Pa. Super. Ct. May 1, 2002) (App. 155, 222).

Since that time – over the past 18 years and counting – Rodland has attempted to challenge his judgments of sentence by exercising his due process right to an adequate and effective direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 392 (1985) ("[T]he Fourteenth Amendment guarantees a criminal appellant pursuing a first appeal as of right certain minimum safeguards necessary to make that appeal 'adequate and effective.'" (quoting *Griffin v. Illinois*, 351 U.S. 12, 20 (1956))); *see also* Pa. Const. art. V, § 9 (granting right of appeal). His efforts took him through the state courts, and in 2009, Rodland petitioned for a writ of habeas corpus in federal court, *see* 28 U.S.C. § 2254, which is now at issue in this appeal.

Rodland's *pro se* federal habeas petition contends that due to inordinate state-court delay in reinstating and processing his direct appeals, he has been denied due process.[1] To make such a claim, Rodland must show prejudice from the delay. *See Simmons v. Beyer*, 44 F.3d 1160, 1169–70 (3d Cir. 1995) (explaining that, in determining whether "appellate delay ha[s] violated due process," courts should consider the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and *prejudice to the defendant*" (emphasis added) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972))). And in his amended habeas petition, Rodland identifies two types of potential prejudice affecting his due process right to a meaningful direct appeal. First, he argues that the

---

[1] Following the Superior Court's dismissal of his original direct appeals in 2002, Rodland twice sought to restore his appellate rights *nunc pro tunc* by filing petitions in the Blair County Court of Common Pleas pursuant to Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. § 9541 *et seq*.

His first efforts began with PCRA petitions filed in 2002 and culminated in the reinstatement of his direct appeals *nunc pro tunc* in 2006. But those reinstated direct appeals were dismissed as to all but one issue in 2010 because Rodland's appointed counsel filed a brief that was "unfocused, rambling and lacking in adequate citation and legal and factual analysis." *Commonwealth v. Rodland*, Nos. 1710, 1777 WDA 2008, slip op. at 3 (Pa. Super. Ct. June 15, 2010) (App. 395).

Based on the ineffectiveness of his appellate counsel during his reinstated appeals, Rodland returned to the Court of Common Pleas in 2011 with a second round of PCRA petitions. In 2017, his appellate rights were restored *nunc pro tunc* for the second time.

Rodland's latest attempt at directly appealing his 2001 judgments of sentence remains ongoing. In 2019, the Superior Court addressed the merits of the nine issues Rodland presented and granted him some relief. It affirmed the PCRA court's vacatur of his sentence at a criminal docket number that had previously been dismissed, and it also vacated several other sentences based on the trial court's failure to specify restitution. *Commonwealth v. Rodland*, Nos. 1087–89 WDA 2017, 2019 WL 2793580, at *2, *4–5 (Pa. Super. Ct. July 2, 2019). The Superior Court remanded those docketed cases for resentencing, but the Commonwealth filed a petition for allowance of appeal, which is currently pending before the Supreme Court of Pennsylvania.

inordinate delay renders him unable to rely on an allegedly exculpatory witness, who during the pendency of his appeals has gone missing. Second, he contends that due to the delay, certain records of his trial court proceedings have been lost or destroyed.

To date, no federal court has considered the merits of Rodland's habeas petition. Rather, a series of rulings by the Magistrate Judge and the District Court have consistently concluded that Rodland has not satisfied a prerequisite to merits review: the exhaustion of state-court remedies. *See* 28 U.S.C. § 2254(b)(1)(A). In 2015, six years after Rodland filed his habeas petition, the Magistrate Judge determined that Rodland did not exhaust his state-court remedies. Rather than dismiss Rodland's habeas petition on that ground, the Magistrate Judge entered an order that stayed the case and held it in abeyance pending exhaustion. *See Rhines v. Weber*, 544 U.S. 269, 277–78 (2005) (affording district courts discretion to stay and abey a § 2254 petition to allow a petitioner to present unexhausted claims in state court and then return to federal court). Rodland challenged that stay-and-abey order by twice moving to lift the stay, but the Magistrate Judge denied his requests. Rodland later moved to open the case, and the Magistrate Judge issued a report and recommendation to deny the motion, finding that Rodland had not yet exhausted his state-court remedies. On March 27, 2018, the District Court, upon review of the record and the Magistrate Judge's recommendation, denied Rodland's motion to open the case. Rodland now appeals that order.

In reviewing that order *de novo* as of the date of its issuance, we conclude that the District Court erred in denying Rodland's motion to open his federal habeas proceedings. *See Holloway v. Horn*, 355 F.3d 707, 713 (3d Cir. 2004) (reviewing *de novo*

4

determinations regarding exhaustion); *Carpenter v. Vaughn*, 296 F.3d 138, 141 (3d Cir. 2002) (Alito, J.) (evaluating exhaustion "at the time of the District Court decision"). At its core, a stay-and-abey order is premised on the existence of one or more unexhausted claims. *See Rhines*, 544 U.S. at 271–72. Thus, a stay-and-abey order is not justified when all of the claims in a federal habeas petition have been either exhausted or excused from exhaustion. *See* 28 U.S.C. § 2254(b)(1)(A), (B). As explained below, at the time of the District Court's order, Rodland's first claim of prejudice (premised on the now-missing, allegedly exculpatory witness) was exhausted, and his second claim of prejudice (premised on the loss or destruction of certain court records) was excused from exhaustion. We will therefore vacate the District Court's order and remand for further proceedings to consider the merits of the due process arguments in Rodland's petition.

## I.

As an initial matter, in defending the District Court's order, the Commonwealth of Pennsylvania disputes Rodland's ability to appeal at this time. According to the Commonwealth, the order is not appealable under the collateral order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). But that argument conflicts with this Court's precedent, which provides that "an order which holds a habeas appeal in abeyance" is subject to appellate review under the collateral order doctrine. *Christy v. Horn*, 115 F.3d 201, 203–06 (3d Cir. 1997). That precedent has not been disturbed by subsequent Supreme Court decisions. *Cf. Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 105 & n.1, 108 (2009) (abrogating prior circuit precedent permitting interlocutory appeal of orders requiring disclosure of information allegedly subject to

5

attorney-client privilege). Without an overruling of circuit precedent or an alteration to the elements of the collateral order doctrine, we have jurisdiction over Rodland's appeal. *See Christy*, 115 F.3d at 206.

## II.

The District Court's ruling rests on the premise that Rodland did not exhaust available state-court remedies. To satisfy the exhaustion requirement, *see* 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also* 28 U.S.C. § 2254(c). In Pennsylvania, petitioners afford the state courts that opportunity by fairly presenting their claims to the Superior Court, either on direct review or on appeal of a petition under Pennsylvania's Post Conviction Relief Act (PCRA). *See Lambert v. Blackwell*, 387 F.3d 210, 232–34 (3d Cir. 2004). To fairly present a claim, a petitioner must introduce both the legal theory and its underlying factual support. *See McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) ("To 'fairly present' a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." (citations omitted)).

## A.

Rodland successfully exhausted his first due process claim concerning his lack of a meaningful direct appeal (premised on prejudice from a now-missing, allegedly exculpatory witness) by fairly presenting it to the Superior Court in 2007. He did so as

part of his efforts to reinstate, for the first time, his direct appeal rights *nunc pro tunc*. In briefing PCRA petitions on that issue, Rodland argued that the "inordinate delay" in resolving his 2002 PCRA petitions "denied him due process" and "prejudice[d] him from pursuing an effective direct appeal." *See Commonwealth v. Rodland*, Nos. 1999 CR 890–913, 1107–12, slip op. at 7 (Ct. C.P. Blair Cnty., Pa. July 21, 2006) (App. 287). To show prejudice, Rodland contended that an exculpatory witness, Barry McConnell, could no longer be located and that his testimony was necessary for any appeal.[2] The Court of Common Pleas rejected that claim, and the Superior Court affirmed, concluding that Rodland had failed to make a showing that the "critical witness" was now missing. *Commonwealth v. Rodland*, Nos. 1677–93, 1721–36 WDA 2006, slip op. at 15 (Pa. Super. Ct. Nov. 14, 2007). Rodland thus gave the state courts "one full opportunity to resolve" his missing-exculpatory-witness claim, satisfying the exhaustion requirement for that claim. *See O'Sullivan*, 526 U.S. at 845.

---

[2] As set forth in his amended federal petition, Rodland alleges that, after his sentencing and during the pendency of his original direct appeals, he learned that McConnell falsely testified at Rodland's second jury trial in exchange for favorable treatment on McConnell's own criminal charges. Rodland alleges that he informed his appointed appellate counsel of that discovery, but his counsel did not present that development to the court, and McConnell has since gone missing. *See Commonwealth v. Rivera*, 939 A.2d 355, 358 (Pa. Super. Ct. 2007) (explaining that upon discovery of exculpatory evidence during a direct appeal, a defendant must promptly present the issue to the Superior Court and request a remand to the trial court for an evidentiary hearing on whether a new trial should be granted (citing Comment to Pa. R. Crim. P. 720(C))); *see also Commonwealth v. Castro*, 93 A.3d 818, 827 (Pa. 2014) ("[A Rule 720] motion must, at the very least, describe the evidence that will be presented at the hearing. Simply relying on conclusory accusations . . . is insufficient to warrant a hearing."); *Commonwealth v. Smith*, 17 A.3d 873, 887 (Pa. 2011) ("[T]he proposed new evidence must be producible and admissible.").

B.

By contrast, Rodland has not exhausted his second due process claim regarding his lack of a meaningful direct appeal (premised on prejudice from the loss or destruction of certain court records).  He could not present that claim at the outset because it was not until his second attempt to reinstate his appellate rights *nunc pro tunc* that he discovered that audio tapes of two pre-trial hearings concerning his speedy trial rights, *see* Pa. R. Crim. P. 600, had been "purged in accordance with the 7 year rule of purgation as provided by the Pennsylvania Rules of Court 507(b)." *Commonwealth v. Rodland*, Nos. 1999 CR 890–913, 1107–12, Order at 1 (Ct. C.P. Blair Cnty., Pa. May 14, 2012).  Rodland also alleges in his amended federal petition that the transcript from his first sentencing hearing – which was apparently missing for a number of years and only rediscovered in 2012 – is inaccurate and lacks all favorable testimony.  *But see Commonwealth v. Rodland*, Nos. 1999 CR 890–913, 1107–12, Order at 1 (Ct. C.P. Blair Cnty., Pa. July 25, 2012) ("[T]his Trial Court certifies that the January 19, 2001 sentencing transcript is accurate in accordance with the audio.").  To account for these discoveries, Rodland supplemented his 2011 PCRA petitions and argued that the loss or destruction of these materials "severely hamper[ed] his ability to argue certain issues on appeal." *Commonwealth v. Rodland*, Nos. 1999 CR 890–913, 1107–12, slip op. at 23 (Ct. C.P. Blair Cnty., Pa. June 13, 2017) (App. 727).  The Court of Common Pleas did not squarely address that due process claim.  Instead, it held that Rodland's allegations would be "cured by the reinstatement of [his] direct appeal rights." *Id.* at 17 (App. 721).  Critically, however, Rodland did not raise his records-destruction claim in appealing the

PCRA order.[3] *See Commonwealth v. Rodland*, Nos. 1087–89 WDA 2017, 2019 WL

2793580, at *2 (Pa. Super. Ct. July 2, 2019). Without fair presentation of that claim to

the Superior Court, Rodland did not exhaust it.

III.

Despite failing to exhaust his records-destruction claim, Rodland would still be

entitled to federal court review of that claim if exhaustion were excused. The federal

habeas statute provides two exceptions to the exhaustion requirement: (i) if "there is an

absence of available State corrective process" or (ii) if "circumstances exist that render

such process ineffective to protect the rights of the applicant." 28 U.S.C.

§ 2254(b)(1)(B)(i), (ii). The first exception includes procedural default situations. *See*

*Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000) ("If . . . state procedural rules bar a

petitioner from seeking further relief in state courts, the exhaustion requirement is

satisfied because there is an absence of available State corrective process." (internal

quotation marks and citations omitted)). The second exception includes inordinate delay

in state-court proceedings that renders that process ineffective. *See Lee v. Stickman*,

357 F.3d 338, 341 (3d Cir. 2004) ("[I]nexcusable or inordinate delay by the state in

---

[3] Rodland *did* raise the argument that his speedy trial rights had been violated – without any assertion that the lack of speedy trial hearing transcripts prejudiced his ability to argue the issue on appeal. The Superior Court addressed and rejected this claim, determining that no speedy trial violation had occurred. *Commonwealth v. Rodland*, Nos. 1087–89 WDA 2017, 2019 WL 2793580, at *7–9 (Pa. Super. Ct. July 2, 2019).

processing claims for relief may render the state remedy effectively unavailable." (quoting *Wojtczak v. Fulcomer*, 800 F.2d 353, 354 (3d Cir. 1986))).

Only the first exception – the absence of available state-court remedies – excuses Rodland's failure to exhaust his records-destruction claim. That is so because regardless of any state-court delay, Rodland failed to raise his records-destruction claim in his most recent appeal before the Superior Court, procedurally defaulting the issue. On March 26, 2018 – the day before the District Court order now on appeal – Rodland filed an appellate brief raising nine issues, but his records-destruction due process claim was not among those. *See* Rodland's Brief at 5–7 (Mar. 26, 2018), *in Commonwealth v. Rodland*, Nos. 1087–89 WDA 2017, 2019 WL 2793580 (Pa. Super. Ct. July 2, 2019). As a matter of state law, by not raising that issue, Rodland waived it on appeal and simultaneously lost the ability to raise it in a future PCRA petition.[4] Thus, at the time of the District Court's order, state procedural rules prevented Rodland from "seeking further relief in the state courts," *Parker v. Kelchner*, 429 F.3d 58, 62 (3d Cir. 2005), and his claim was "deemed exhausted," *Lines*, 208 F.3d at 160. Accordingly, Rodland was excused from exhausting his records-destruction claim under the first exception. *See Wenger v. Frank*, 266 F.3d 218, 223–24 (3d Cir. 2001) (Alito, J.) ("If . . . further state-

---

[4] *See* Pa. R. App. P. 2116(a) ("No question will be considered [on appeal] unless it is stated in the statement of questions involved or is fairly suggested thereby."); *Wirth v. Commonwealth*, 95 A.3d 822, 858 (Pa. 2014) (noting that Rule 2116(a) "is to be considered in the highest degree mandatory, admitting of no exception" (citation omitted)); *see also* 42 Pa. Cons. Stat. § 9543(a)(3) (providing that PCRA relief is only available if "the allegation of error has not been previously . . . waived"); *id.* § 9544(b) (stating that "an issue is waived if the petitioner could have raised it but failed to do so . . . on appeal").

10

court review is clearly foreclosed under state law, exhaustion is excused on the ground of futility. Under those circumstances, the claim is procedurally defaulted, not unexhausted, and the claim may be entertained in a federal habeas petition only if there is a basis for excusing the procedural default." (citations omitted)).

It may be, however, that the second basis for excusing exhaustion could overtake the first. If inordinate delay in the state-court proceedings rendered that process ineffective before Rodland's procedural default, then it would be possible to excuse exhaustion on that separate ground.

The degree of state-court delay associated with Rodland's second due process claim (premised on prejudice from the loss or destruction of court records) depends in large part on the amount of time that the state courts could have ruled on that claim but did not. *See Hankins v. Fulcomer*, 941 F.2d 246, 250 (3d Cir. 1991) (noting that in a case involving inordinate delay, the principle of comity that underlies the exhaustion requirement "weighs less heavily because the state has had ample opportunity to pass upon the matter" but has failed to do so). But if Rodland caused the delay, he will not be excused from exhaustion on that basis. *See id.* at 252 ("Even lengthy delay in a state court action may be insufficient to avoid dismissal of a habeas corpus petition for lack of exhaustion, when the petitioner himself is responsible for the delay.").

Litigation of Rodland's records-destruction claim took five-and-a-half years in the Court of Common Pleas. With the benefit of a liberal construction of his *pro se* amended PCRA petition, Rodland first presented his records-destruction claim in November

11

2011.[5]  Afterwards, Rodland filed numerous motions, including requests for discovery, for the cost of an audio forensic expert to be paid by the Commonwealth, for a transcript to be corrected, for the record to be modified, and for a psychiatric examination.  The Court of Common Pleas did not neglect those requests; to the contrary, it held multiple hearings to adjudicate Rodland's claims.  Of particular significance is the status conference held in June 2012.  There, in an effort to unscramble Rodland's many *pro se* filings, the Court of Common Pleas requested that Rodland file an outline of the precise issues that he was raising.  It took Rodland and his appointed counsel until August 2015 – over three years – to file that outline.  Although Rodland's eventual outline raised 42 issues, the Court of Common Pleas was still able to hold an evidentiary hearing on each of those issues within four months, in December 2015.  After that hearing, Rodland requested multiple extensions to file his post-hearing brief, and as he now concedes, those extensions delayed the final decision until June 2017.

After the Court of Common Pleas issued its decision, Rodland appealed to the Superior Court on July 28, 2017.  He did not file his appellate brief – which failed to raise his records-destruction claim – until March 26, 2018, having again requested multiple

[5] In the months before amending his petition, Rodland was a very active litigant.  His filings included motions for copies of documents, for bail pending disposition of his PCRA petition, for a finding of contempt and issuance of sanctions, as well as requests to correct the docket/record (at least four times), to inspect the public record, and to expunge data.  After the Court of Common Pleas denied his motion for bail, Rodland appealed, and as a result, many of Rodland's trial court records were transferred to the Superior Court during the pendency of that appeal, between February 2012 and January 2013.  *See Commonwealth v. Rodland*, No. 1170 WDA 2011, 2013 WL 11299454 (Pa. Super. Ct. Jan. 11, 2013) (affirming denial of application for bail).

extensions.  That appeal was not the only item before the Superior Court during this time; the court also vacated the lower court's grant of Rodland's renewed application for bail and later denied Rodland's same bail application after he re-filed it.

As the state-court dockets reveal, the delay associated with Rodland's records-destruction claim was not inordinate.  For much of the time, Rodland's petition was not sufficiently developed to allow the Court of Common Pleas to rule.  It also took him over three years to file an outline of his claims, and he requested several extensions for post-hearing briefing.  Additionally, as of the date of the District Court's order, March 27, 2018, Rodland's state-court appeal was moving forward – he had filed his opening brief the day beforehand.  *See Lee*, 357 F.3d at 342 (accounting for "the degree of progress made in state court" when assessing inordinate delay); *see also Cristin v. Brennan*, 281 F.3d 404, 411 (3d Cir. 2002) (cautioning against excusing exhaustion "when previously stalled state proceedings resume").  And the timing of that brief was protracted by Rodland's several requests for extensions.  Thus, inordinate delay does not provide a basis to excuse exhaustion for Rodland's records-destruction claim.

In sum, procedural default, but not inordinate delay, provides a basis to excuse Rodland from exhausting his records-destruction claim.  *See Cristin*, 281 F.3d at 411–12 (excusing exhaustion based on procedural default rather than inordinate delay).  To obtain substantive review of that claim on remand, Rodland will have to overcome the general prohibition on review of procedurally defaulted claims.  That requires showing "'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation.'"  *Davila v. Davis*,

13

137 S. Ct. 2058, 2064–65 (2017) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977), and citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

* * *

As of the date of the District Court's order, the exhaustion requirement was satisfied. Rodland exhausted his first claim (premised on prejudice from a now-missing, allegedly exculpatory witness). And due to procedural default, he was excused from exhausting his second claim (premised on prejudice from the loss or destruction of certain court records). Because a stay-and-abey order depends on unexhausted claims, the District Court's order upholding the prior stay-and-abey order was not justified. For that reason, we will vacate that order and remand this case to the District Court to (i) address the merits of Rodland's first claim and (ii) apply the procedural default doctrine to his second claim and, if warranted, reach the merits of that claim.